Donald RIGGS and Robert Garland, Appellants,

v.

Ben MILLER, Appellee.

Court of Appeals of Kentucky.

Oct. 15, 1965.

Rehearing Denied Dec. 17, 1965.

Thomas B. Givhan, Shepherdsville, for appellants.

T. C. Carroll, Shepherdsville, for appellee.

STEWART, Judge.

This is an appeal from a judgment on a directed verdict entered by the Bullitt Circuit Court in favor of Ben Miller, defendant-appellee herein.

Each plaintiff in a joint complaint sought to recover from appellee $3000 as damages for injuries claimed to have been received. The car owner, named hereinafter, sought in addition $1250 as damages allegedly sustained by his automobile.

On the morning of July 10, 1963, plaintiff, Robert Garland, was driving his Oldsmobile automobile in a northwardly direction on Highway 61 in Bullitt County. Garland was accompanied by plaintiff, Donald Riggs, who was riding on his right in the front seat. Both plaintiffs are appellants herein. The Bernheim Road (herein referred to as "the Road") meets Highway 61 at a "T" intersection, which is a stop intersection for vehicles turning either north or south from the Road. It was a clear day, both of these highways were dry, and at or near the intersection one had an unobstructed view southwardly for about a quarter of a mile.

Garland testified he was traveling fifty or fifty-five miles an hour. As he was passing the intersection of Highway 61 with the Road, a truck he later learned was operated by Ben Miller came off the Road without stopping and struck his car on the right side in front of the back wheels. He said the rear end of the Miller truck was still on the Road when the truck and car collided; and that he did not observe the truck until it was "right on" him.

Riggs testified that, as Garland drew near the intersection, he could see the Miller truck approaching the intersection on the Road. Then he started to turn on the car radio and, while looking down at it, heard the car's horn blow and its tires scream. He glanced up just before the vehicles met. He stated that Garland was "trying to move over to keep the truck from hitting us and the truck hadn't turned all the way out then."

John J. Stewart, a witness for appellants, was going south on Highway 61 on the occasion of the accident. He testified he noticed the truck coming into the intersection, as he "was paying particular attention to it." He said it appeared to him, if the truck did not stop, he might collide with it if it did not turn in such a manner that he could avoid it. Then it turned toward him, clearing his side of the highway, and he was able to pass it with safety. Almost at the same moment he saw the Garland car coming from the opposite direction on Highway 61. He said: "I just had this thought, 'There's going to be a wreck.'" He was unable to see the Garland car and the truck make contact, which happened an instant later.

Stewart also made this pertinent statement: "The only thing I can state is when I saw the truck turning this (Stewart's)

way, I looked up and saw the car and of course, I would say in my opinion the car wasn't speeding. * * * it was almost there at the intersection and I never paid too much attention to it other than knowing * * * there would probably be an accident."

Donald J. Carter, who was also a witness for appellants, was following the Stewart car in a southerly direction on Highway 61. He could not get a view of the Garland car, although he later knew it was then at the intersection. He stated that "this car skidded into the truck right in front of me." He was asked if the truck had completed its turn out of the intersection at the time the collision occurred. He replied: "As well as I recollect, he was already around the corner. He was right at the intersection and whether he was all the way around it or not I'm not sure. It happened so fast, as well as I recollect, I think he was almost completely in the turn."

Miller testified that as he approached this intersection on the Road from the east he slowed down to "something like three or four or maybe five miles an hour." He stated further that he "looked toward Lebanon Junction (which is south on Highway 61) and did not see any cars coming"; he then "looked toward Louisville (which is north on Highway 61) and saw two coming." Miller also stated that when he reached the intersection he "did not come to a perfect stop" but instead "rolled out on the road" in order to turn north toward Louisville. According to his testimony, he had proceeded on Highway 61 a distance between 80 and 85 feet when he was struck in the rear by Garland's car. He said: "I heard a racket and I was just coasting along, fixing to shift gears, and I slapped the brakes and that is the first I seen the machine that hit me."

Richard McHugh, a trooper with the Kentucky State Police, investigated the accident, and, called as a witness by appellants, testified that debris from the car was cast upon Highway 61 just north of the in-

tersection. This debris was in the middle of the highway, "a little north of the impact," and consisted of glass, dirt "and some chrome and parts of the car." Based upon the location of the debris, he estimated the car and the truck ran together about 20 to 25 feet from the intersection. He also stated he measured the skid marks and they ran back 231 feet from the point where the vehicles collided. (Other witnesses of appellee testified the skid marks of Garland's automobile were between 250 and 260 feet in length.)

The trooper was also permitted to file as exhibits seven photographs that were taken by him, shortly after the accident, before the car and the truck had been moved. In viewing these photographs one gets the impression that the car's right side sideswiped the left rear end and fender of the truck. One also can see the intersection sign in two of the photographs, and this sign appears to be located only a very short distance from the positions of the car and truck after the accident.

At the conclusion of all the evidence both appellants and appellee moved the court to direct the jury to render a verdict in their favor. The trial judge sustained appellee's motion, holding that Garland's negligence was the sole cause of the accident. The reasoning of the trial judge was that, because Garland skidded his car at least 231 feet before it made contact with the truck, this circumstance conclusively indicated he was either not keeping a lookout or was traveling at an excessive rate of speed.

Garland gave no explanation for the skidding except to state that he applied his brakes after he saw the truck was "right on" him. Why he skidded 231 or more feet under the circumstances is a matter about which one must conjecture. Certainly, apart from other causative factors, we cannot hold as a matter of law that a vehicle which skids 231 feet must be presumed to have been driven negligently. Cf. Clark v. Rucker, Ky., 377 S.W.2d 65.

**72**

■ The theory that Garland was not maintaining a proper lookout is no doubt predicated upon Miller's testimony that he had driven his truck off the Road and had traveled from 80 to 85 feet on Highway 61 when his vehicle was hit in the rear by Garland's car. It is doubtful that even this distance of travel, under the facts presented, could be considered a proper yielding by Miller of the right of way to Garland. It is indeed true that a motorist should watch the road with alertness, but no duty is placed upon him to anticipate that another motorist might disregard a stop sign and run into him.

■ In our opinion the evidence in this case does not establish speeding upon the part of Garland. The latter's statement that he was operating his car at a speed of between 50 and 55 miles per hour stands uncontradicted. This rate of travel was within the lawful limit allowed on Highway 61 at the time and place of the mishap. See KRS 189.390(1) (a). Besides there is the undisputed testimony of John J. Stewart, an impartial witness, that in his opinion Garland was not speeding.

■ It appears to us that appellee, without stopping, moved his truck out onto Highway 61 from the Road at a time when Garland's car was "approaching so closely as to constitute an immediate hazard." Thus he failed to observe a duty placed upon him by KRS 189.330(4). Nor was it sufficient that he should have stopped on this occasion; he should also have yielded the right of way to Garland by not proceeding into the intersection until he was able to do so with safety.

■ Garland could reasonably assume, under the circumstances, that appellee would comply with the applicable law, KRS 189.330(5), and stop and remain stationary until he was reasonably certain that Highway 61 was clear of traffic; and Garland was free to act upon that assumption in determining his own manner of using the highway. See Vaughn v. Jones, Ky., 257 S.W.2d 583, 584.

We find no evidence in the record that Garland was negligent. On the other hand, we must hold appellee solely to blame for the accident out of which this litigation grew. Therefore, upon the return of this case to circuit court, a jury shall determine the amount of damages to which each appellant is entitled, as the evidence introduced may show.

Wherefore, the judgment is reversed for further proceedings consistent with this opinion.