**Aaron Lee METCALFE et al., Appellants,**

**v.**

**Vernon HOPPER, Executor of C. B. Hopper Estate, et al., Appellees.**

Court of Appeals of Kentucky.

March 11, 1966.

**532**

W. Earl Dean, Harrodsburg, for appellants.

W. A. Wickliffe, Harrodsburg, James F. Clay, Danville, for appellees.

DAVIS, Commissioner.

The questions for decision on this appeal arise from an automobile accident which occurred in October, 1963, at the intersection of Kirkwood Road and U. S. Highway 127 as the latter highway by-passes Salvisa. Three vehicles were involved in the accident: a passenger car driven by appellee's decedent, C. B. Hopper; a passenger car driven by appellee Fred B. Ransdell, and a tractor-trailer unit driven by appellant Aaron Lee Metcalfe. C. B. Hopper was killed in the accident. Property damage was done to all three vehicles, and there was property damage to the cargo in the trailer. Appellant Metcalfe and appellee Ransdell sustained personal injuries in the collision.

The personal representative of C. B. Hopper sued Metcalfe, and other appellants, asserting a claim for damages for the wrongful death of C. B. Hopper and for property damage to decedent's car. Metcalfe counterclaimed, seeking damages for personal injuries, medical expenses and loss of earnings. Other appellants sought recovery from the Hopper estate for alleged damages to the tractor-trailer and the cargo.

Appellee Ransdell, by intervening complaint, sought recovery for personal injuries and property damage against appellants and the Hopper Estate. Appellants and the Hopper Estate each asserted that the accident resulted from the sole negligence of the other, and sought indemnity or contribution, alternatively.

The jury rendered a verdict for Ransdell against appellants and the Hopper Estate, jointly, in the sum of $1,000. The opposing claims of the Hopper Estate and appellants were dismissed, upon the jury's verdict that the accident was caused by the concurrent negligence of C. B. Hopper and appellant Metcalfe.

The appellants contend that the trial judge should have directed a verdict for them against the Hopper Estate, and that prejudicial error was committed by the trial court's rejection of competent evidence offered by appellants.

For clarity, we shall refer to the operators of the three vehicles by their surnames: Hopper, Ransdell, and Metcalfe.

Metcalfe was operating the tractor-trailer northwardly on U. S. Highway 127, which is a four-lane highway, affording two lanes for north-bound traffic and two lanes for south-bound traffic; the north and south lanes are separated by a median strip about 25–30 feet in width. Hopper was driving his car eastwardly along Kirkwood Road, which is an inferior road as it intersects U. S. 127 at the accident site. Ransdell was operating his car westwardly along Kirkwood Road, and was stopped at the stop sign on the east side of Kirkwood Road, awaiting clearance of traffic on U. S. 127 before entering the intersection.

Hopper had stopped at the stop sign on the west side of U. S. 127 (according to the testimony of both Metcalfe and Ransdell). Hopper then proceeded to drive eastwardly across the two south-bound lanes of U. S. 127 (each lane was 12 feet wide), thence alongside the median strip (some 25–30 feet), and then across the inside north-bound lane of U. S. 127 (another 12 feet), and partially across the outside, or right-hand, north-bound lane when his car was struck by the Metcalfe tractor-trailer unit. The officer who investigated the accident fixed the point of impact as 9' 8" east of the east edge of U. S. 127; according to the officer's estimate, since Hopper's car was 16' 9" in length, as much as seven feet of the right-hand, north-bound lane of U. S. 127 was occupied by Hopper's car at the moment of impact. When Metcalfe's unit collided with Hopper's car, either or both of the vehicles then struck the Ransdell car as it sat in its stopped position.

The day of the accident was clear; the road surface was dry. There was a slight down grade for Metcalfe. Sight distance was extremely good—Hopper and Metcalfe could have observed the vehicle of the other at least 3,500 feet away. Skid marks noted just after the accident reflected that the right wheels of Metcalfe's unit had been pulled off the highway surface onto the right gravel shoulder about 60 feet south of the point of impact. These marks indicated that the Metcalfe unit had proceeded northwardly, at a slight angle away from the center line of the road, until the collision occurred. The marks then were visible to the point at which the Metcalfe unit came to rest, lying on its right side, about 100 feet north of the point of impact and some 30–40 feet east of the east edge of U. S. 127. The trooper's measurements indicated that the Hopper car was knocked some 124 feet from the point of impact, and the Ransdell car was propelled about 12 feet from its standing position.

There was a wide variance in the evidence concerning the distance separating the Hopper car and the Metcalfe unit at the time Hopper proceeded to cross the northbound traffic lanes on U. S. 127. Metcalfe testified that he was approximately 150–170 feet away when Hopper started across the northbound lanes; a witness who observed the situation from his nearby porch deposed that Metcalfe was 800–900 feet away when Hopper drove into the northbound lanes; Ransdell estimated that Metcalfe was 450 feet (150 yards) away at the time Hopper entered the northbound lanes.

As to Metcalfe's speed there was also some variance in the testimony. For example, Metcalfe estimated his speed at 50–55 mph; the "porch" witness put Metcalfe's speed at 65–70 mph, and Ransdell testified that he judged Metcalfe's speed as about 50–60 mph. It was admitted that the prevailing speed limit at the accident site was 50 mph.

There was evidence indicating that the left tires of Metcalfe's unit had laid down "skip" skid marks on the concrete road surface. For Hopper it is urged that this circumstance indicates defective brakes. However, Metcalfe explained that the gravel in which his right wheels were travelling permitted a locking of the right wheels, but the weight of the cargo pre-

vented the locking of the wheels on the smooth highway surface. Metcalfe swore, without contradiction, that the brakes on the unit were in excellent working condition.

Metcalfe conceded that he did not sound his horn; he explained this by stating that although he was some 500–600 feet from the intersection when he observed Hopper stopped at the west side of U. S. 127, he was only 150–175 feet from the intersection when Hopper approached the northbound lanes, and assumed that Hopper would stop before crossing the latter lanes.

Appellants insist that our decisions in Chambliss v. Lewis, Ky., 382 S.W.2d 207, Couch v. Hensley, Ky., 305 S.W.2d 765, and Vaughn v. Jones, Ky., 257 S.W.2d 583, require that a directed verdict be accorded them, since Hopper's negligence was the *sole* cause of the accident. The cases cited, and others of like import, are based on KRS 189.330(4), which directs drivers along inferior highways to yield the right of way to drivers along superior roads when the latter are approaching "so closely on the highway as to constitute an immediate hazard." It should be noted that the cited statute concludes with the following wording:

> " * * * but the driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so proceeding into or across the through highway."

Thus it is clear that whether the approaching vehicle on the superior highway is approaching so closely as to constitute an "immediate hazard" is the critical question when examining the negligence of the inferior road driver. In *Chambliss*, just cited, it was held that the negligence of the inferior road driver was the sole cause of the accident, under the particular facts of that case. We consider the present case distinguishable from *Chambliss*.

We are now measuring the situation with reference to Metcalfe's right to recover from Hopper. (The recovery of the other appellants stands or falls with Metcalfe's right of recovery). The jury's verdict has established Hopper's negligence —so it is plain that Hopper's recovery is barred by Hopper's contributory negligence. In measuring Metcalfe's right of recovery we view his situation as if he were the plaintiff, and look to the question of whether the evidence created a jury issue as to Metcalfe's contributory negligence. In so doing we must weigh the evidence in the most favorable aspect for Hopper.

We find evidence that Metcalfe was exceeding the speed limit—probably very slightly. To this must be added the evidence that Metcalfe could have seen Hopper undertaking to cross the northbound lanes when Metcalfe was yet 800 feet away. If it should be reasoned that the "porch" witness gave evidence so fantastic as to be incredible, we are left with the evidence of appellee Ransdell that Metcalfe was 450 feet from the collision point when Hopper pulled into the north lanes. It is true that Metcalfe had a right to assume that Hopper would yield the right of way—but that assumption vanished when he observed (or in the exercise of ordinary care should have observed) Hopper fail to yield. At that point Metcalfe was charged with affirmative knowledge that Hopper was not yielding. Did he then exercise ordinary care to avoid the accident? Is the evidence so one-sided on this as to preclude any other reasonable conclusion?

It is recalled that Metcalfe was driving on a road providing two full traffic lanes for northbound traffic. A slight deviation of his vehicle to the left, coupled with a release of acceleration—or even some braking of his unit—when he was yet 450 feet from the accident site may well have prevented the accident. At any rate, we are not able to say that the evidence, and the reasonable inferences flowing from

it, prohibit a finding of contributory negligence against Metcalfe. For example, there was evidence offered that Metcalfe stated at the accident scene that he thought he could beat Hopper—i. e., that Metcalfe could successfully continue in the right lane before Hopper's car came into it. The fact that the brakes were applied by Metcalfe when he was only 60 feet from the point of impact lends some credence to that idea. Without belaboring the point further, we conclude that the evidence warranted the court's denial of appellants' motions for directed verdict and judgment n. o. v.

Having this view of the case, it becomes unnecessary to decide whether the trial court erred in rejecting evidence tending to show Hopper's intoxication at the time of the accident. Assuming the evidence to have been admissible, it would have tended to convict Hopper of negligence. The jury's unchallenged verdict does that anyway, so no prejudice has occurred to appellants on this point.

The judgment is affirmed.

MONTGOMERY, J., dissenting.