Larson E. **TILFORD** et al., Appellants,

v.

Lee A. **GARTH**, Appellee.

Court of Appeals of Kentucky.

July 1, 1966.

Henry V. B. Denzer, Hogan, Taylor, Denzer & Bennett, Louisville, for appellants.

Charles M. Leibson, Charles E. Duncan, Louisville, for appellee.

PALMORE, Chief Justice.

Shortly after midnight of June 25–26, 1963, the appellee, Garth, a night watchman, left his place of employment at Cooke Chevrolet Company in Louisville to have a late lunch at a hamburger stand. He drove his car westwardly along an alley running parallel with and 210 feet south of the south line of Breckenridge Street and, as he attempted to cross Third Street from east to west, was struck on the right side of his car by an automobile being driven southward on Third Street by the appellant Larson Tilford. Garth was injured and Francis Price, a passenger in the Tilford vehicle, was killed.

This negligence action was brought by Garth against Tilford, and Tilford counterclaimed. Price's administratrix intervened against both, whereupon Garth and Tilford cross-claimed against each other for contribution. In due course a jury found that Tilford's negligence was the sole cause of the accident and awarded damages to Garth and the Price estate. Tilford has settled

with the Price estate but appeals from the judgment against him in favor of Garth. He makes two contentions, (1) that Garth was contributorily negligent as a matter of law, and (2) that the trial court erred in instructing the jury that it was Tilford's duty to stop when the traffic light at Third and Breckenridge turned from green to yellow for vehicles on Third Street.

Third Street is a one-way street for southbound traffic. It consists of four 10-foot lanes, which for convenient reference may be numbered from 1 to 4, east to west. The outer lanes, 1 and 4, were used for parking and the inner lanes, 2 and 3, for driving.

Breckenridge is a one-way street for westbound traffic. Traffic at the intersection of Third and Breckenridge is controlled by lights facing north on Third and east on Breckenridge.

According to Garth's evidence, as he reached the intersection of the alley with the east sidewalk of Third Street he stopped to let some pedestrians go by, after which he moved forward and stopped again when the front of his car was somewhere in lane 1 of Third Street, the easterly parking lane. From this point he could see the traffic light that faced east on Breckenridge at Third. It was red, meaning that Third Street traffic was free to come through the intersection, so he waited until it turned green for Breckenridge. Observing no vehicles approaching on Third Street in or south of the intersection, and none turning onto Third from Breckenridge, he then started forward intending to continue along the alley as it extended westwardly on the other side of Third. He looked again at about the time the front of his car reached the middle of Third Street, and at this moment he saw the Tilford car approaching from the north in lane 3 at great speed and so near to the traffic light at Third and Breckenridge that he realized it could not stop at the intersection. He pressed down on the accelerator in effort to spurt across and out of the way, but his car did not re-spond, and rolled on at a slow speed. In a very brief instant he was struck by the Tilford car in lane 3.

Tilford said that as he was going south on Third Street in lane 3 he was driving at about 35 m. p. h., which was the legal speed limit, and that when he came within 30 to 45 feet of the intersection at Breckenridge the traffic light changed from green to yellow. Being too close to stop, he accelerated his automobile in an effort to go through before the light turned red. As he passed through the intersection (by his own admission, exceeding the speed limit) he looked to the left for vehicles that might be entering from Breckenridge and then looked ahead and saw Garth's automobile moving out into Third Street from the alley. He applied his brakes but it was too late to avoid the collision. He left skid marks about 15 feet in length.

Tilford's first contention (that Garth was negligent as a matter of law) is based on our decisions in Vaughn v. Jones, Ky., 257 S.W.2d 583 (1953); Couch v. Hensley, Ky., 305 S.W.2d 765 (1957); Chambliss v. Lewis, Ky., 382 S.W.2d 207 (1964); Louisville & Nashville Railroad Co. v. Fisher, Ky., 357 S.W.2d 683 (1962); Louisville & Nashville Railroad Co. v. Dunn, Ky., 380 S.W.2d 241 (1964); and Cincinnati, New Orleans & Texas Pacific Railway Co. v. Ferguson, Ky., 385 S.W.2d 947 (1965); the latter three being highway-railroad intersection cases. To round out this line we might add Hargadon v. Louisville & Nashville Railroad Co., Ky., 375 S.W.2d 834 (1964), and Shewmaker v. Louisville & Nashville Railroad Co., Ky., 403 S.W.2d 283 (decided May 27, 1966), two more highway-railroad intersection cases; and Riggs v. Miller, Ky., 396 S.W. 2d 69 (1965); Metcalfe v. Hopper, Ky., 400 S.W.2d 531 (1966), and Davidson v. Davidson, Ky. (decided June 17, 1966), three more highway intersection cases.

In all of those cases there was a collision between vehicles using intersecting thoroughfares, highway or railroad. In all

of them but *Shewmaker* and *Metcalfe* the driver of the one entering or attempting to cross the superior road was held negligent as a matter of law. In all of the non-railroad cases but *Metcalfe* this negligence was held as a matter of law to have been the sole cause of the accident. They all focus on one simple proposition, that if the motorist on the inferior road has plenty of time and opportunity to see the vehicle on the superior way and to observe the rapidity with which it is approaching, then in the absence of some special exculpatory circumstance he cannot get hit without being careless. Whether that carelessness is the only proximate cause depends on whether the other driver has reasonable time and opportunity to avoid the collision after he is able to apprehend the negligence of the first motorist. Thus in *Metcalfe*, considering the amplitude of distance between Metcalfe and the intersection at the time a jury could reasonably find he should have realized that Hopper was going to come through, we held it was for the jury to say whether Metcalfe also was negligent. On the other hand, in such cases as *Vaughn, Couch, Chambliss, Riggs,* and *Davidson* the speed and proximity of the vehicle on the superior highway when the other one entered made it obvious that the driver with the right-of-way did not have time to avoid the collision.

It is readily apparent that Garth's reliance on the traffic signal at Third and Breckenridge is a distinguishing feature between this case and those we have cited. Tilford argues that the traffic light was for persons and vehicles using the intersection and that Garth had no right to rely on it. We are unable to agree. It should not be forgotten that by definition ordinary care is that which an ordinarily prudent person would exercise under similar circumstances. We have no hesitation in affirming that under the circumstances of this case an ordinarily prudent person would have done

just what Garth says he did. If he had admitted that he saw the Tilford car nearing the intersection at a high rate of speed before he got out into the middle of Third Street, at a time when he could have stayed out of the way, the *Vaughn, Couch, Chambliss, Riggs* and *Davidson* decisions would have been applicable. But he did not admit that. He said that when he started forward the second time there were no cars between him and Breckenridge Street, or within the intersection, or approaching closely to the intersection. He did see the lights of approaching traffic, among which must have been the Tilford car, but insisted they were some distance north of the intersection. The jury was authorized to believe all of this. And if it was true, he had no reason to anticipate that someone would bolt through the red light and create an immediate hazard.

On the remaining point of contention it could be argued with some force that Tilford was negligent as a matter of law, in which event an error in the instructions outlining his duties would not have been prejudicial. As it is, however, we are of the opinion that the particular instruction in question was not erroneous. By stipulation it was introduced in evidence that Louisville City Ordinance 323.01(b) reads as follows:

"b. *Yellow alone or 'Caution' when shown following the green or 'Go' signal:* Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection."

Unless there is a statute or ordinance to the contrary, the yellow light is nothing more than a warning that the signal is about to change. Brockie v. Shadwick, Ky., 396 S.W.2d 63 (1965);[1] Johnson v. Berry, Ky., 405 S.W.2d 552 (decided July 1, 1966). Its generally understood purpose is to make sure that the approaching motorist has no excuse for breaking the law.

---

1. In Brockie the pertinent subsection of the Louisville ordinance was not properly introduced.

This being so, the requirement of the Louisville ordinance is, to some extent at least, self-defeating, and for that reason and for the sake of uniformity it should be amended. We are unwilling to say, however, that it is so unreasonable as to be void, or that it must be construed to mean something less than what it says. The same situation prevails, of course, where signals change from green to red without the intervention of a cautionary yellow light.

Having stated accurately the law of Louisville, the instruction cannot be held erroneous.

The judgment is affirmed.