E. P. GENTRY and Clarence Egerton,
Appellants,

v.

Mary Nell PEAK, Next Friend of Connie
Peak, an Infant, etc., et al., Appellees.

Court of Appeals of Kentucky.

Jan. 31, 1969.

Wirt Turner, M. J. Jones, Jr., New Castle, for appellant E. P. Gentry.

William G. Reed, Carrollton, for appellant Clarence Egerton.

James F. Thomas, Thomas & Thomas, New Castle, for appellees.

WADDILL, Commissioner.

During the afternoon of August 7, 1964 the automobile being driven in a northerly direction on Highway 42 by appellant, Gentry, collided with the automobile approaching him from the opposite direction being operated by appellant, Egerton. The collision occurred when Egerton suddenly attempted to execute a left turn off the two-lane highway across the path of the oncoming Gentry car. Both cars were damaged and Egerton and his passengers, Connie, Tammy and Cindy Peak, sustained injuries. Egerton sued Gentry and the mother of the Peak children, as next friend, sued both Gentry and Egerton.

Upon trial of these claims the jury decided that both Gentry and Egerton were guilty of negligence and awarded damages against them in favor of Connie, Cindy and Tammy Peak in the sums of $3,586.30, $3,310.00 and $2,176.00, respectively.

Both Gentry and Egerton have appealed from the judgment in favor of the Peak children, each contending that he was entitled to a directed verdict in his favor, but if this court should determine that these contentions are without merit, then it is urged that the awards for the injuries sustained by the Peak children are excessive. Egerton additionally contends that the trial court erred in permitting the jury to hear incompetent and prejudicial testimony over his objections.

In summary, the evidence reflects that immediately prior to the collision Egerton was enroute in his automobile to a fruit market located on the east side of Highway 42, about two miles from Bedford. As Egerton neared his destination he first saw Gentry's automobile approaching him at a distance he estimated at 300 yards and traveling at a speed he described as "fast" and as "pretty fast." The testimony in behalf of Egerton was that Egerton activated his left-turn signal for about 100 feet as he neared the fruit stand and when he reached a place on the highway directly across from the fruit stand he then started to make a left turn. As the front wheels of his automobile passed across the center line dividing the 20-foot highway into two traffic lanes an automobile that was following Egerton sounded its horn, ignored Egerton's left-turn signal and passed Egerton's automobile on its left side, thereby blocking Egerton's attempt to make his left turn off the highway. Egerton stopped his automobile and the passing automobile, whose driver and owner remain unknown, brushed the left front side of Egerton's automobile as it passed and then continued down the highway without stopping. Egerton again tried to make a left turn across the highway and was struck by Gentry's automobile. Concerning what transpired immediately before the collision took place, Egerton testified in part as follows:

"Q. 102. Now, at the time this white car passed you, I suppose your vision was blocked temporarily from seeing Mr. Gentry.

"A. Yes, I already saw Mr. Gentry when I went to make my left turn.

"Q. 103. That's right. You saw him just before you made your left turn is that correct?

"A. Yes, sir. When the other car passed.

"Q. 104. Tell us about your seeing him.

"A. After he hit me, I saw him getting pretty close to me, I tried to get off the road, I was already in his lane.

"Q. 105. About how far were you over in his lane?

"A. I was over the center, I'd say the front wheels was over in his lane.

"Q. 106. And then you tried to push on the accelerator hard and tried to get out of the way?

"A. Yes, as quick as I could. I was already out in his lane when this other car passed me."

On the other side of the case, Gentry testified he first saw Egerton's automobile approaching him when he had reached a straight stretch of road east of Bedford. Gentry was then traveling approximately 50 miles an hour in a 60-mile-an-hour speed zone. When his automobile was from 150 to 200 yards from Egerton's automobile he first realized that Egerton was slowing down as he approached the fruit market. Gentry stated that he reduced his speed and, when he was "just about" 125 feet from Egerton's automobile, Egerton turned abruptly across the highway into the Gentry lane of traffic. Gentry applied his brakes and skidded approximately 60 feet and collided into the side of Egerton's automobile. Both Gentry and his passenger, Robert Doyle, stated that no automobile had passed Egerton immediately before the accident as Egerton claimed. A state trooper who investigated the accident found 60 feet of track marks made by the skidding Gentry automobile, all of which the trooper stated were on Gentry's side of the road. All witnesses agreed that only the front wheels of the Egerton car had reached the east shoulder of the highway when the Gentry automobile ran into the side of the Egerton automobile, which was in the northbound traffic lane.

We find that the evidence clearly shows that Egerton violated the provisions of KRS 189.380(1), which provides in part:

"No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety * * *."

Egerton testified that he saw Gentry's automobile approaching him from some distance prior to activating his left-turn signal and also before he was compelled to stop his automobile to permit the automobile that was following him to pass. With the knowledge he had of the nearness of the Gentry automobile at that time, which he said was "coming fast," Egerton proceeded to abruptly complete the left turn. In Smith v. Sizemore, Ky., 300 S.W.2d 225, we held that the driver of an automobile approaching from the opposite direction has a right to rely on compliance with the above-quoted provisions of the statute.

As concerns Gentry, the evidence fails to establish any negligence on his part. Gentry testified when he saw Egerton was "going to cut across the road" their automobiles were then about 125 feet apart; that he applied his brakes and skidded his automobile 60 feet in his traffic lane trying to avoid the accident.

It is uncontradicted that Gentry was operating his automobile at a lawful rate of speed in his traffic lane and was keeping a proper lookout. We hold that he had a right to assume that Egerton would not abruptly drive across the highway in front of him since obviously this could not be done with reasonable safety. Therefore, we conclude as a matter of law that under Egerton's own testimony it was his negligence alone that caused the collision.

Under our view of the case Gentry's motion for a directed verdict in his favor should have been sustained. See Wandling v. Wandling, Ky., 357 S.W.2d 857. Since Gentry made a motion for judgment notwithstanding the verdict, we direct the entry of judgment in Gentry's favor absolving him of liability upon all claims presented in these consolidated actions.

During the course of the trial Gentry, testifying over Egerton's objections, injected the fact that Egerton had insurance. The record reflects this portion of Gentry's testimony, the motions and rulings thereon, as follows:

"Q. 32. Now, what occurred right after this accident?

"A. * * * Mr. Egerton said he didn't see me, it was his fault, and he told me it was his automobile and I said 'it makes no difference about the automobile, let's get something done for these kids. * * *.'"

"Q. 33. * * * Will you tell the Court specifically what Mr. Egerton's words were when he told you it was his fault?

"A. He said, 'I didn't see you, and it's my fault.'"

"Q. 34. Now, go ahead with your explanation.

"A. I said, 'do you have insurance?' He said, 'yes.'"

BY MR. REED: Object, the Court, please.

BY MR. TURNER: Don't mention that. Don't refer to that.

BY MR. REED: We are making a motion to discharge the Jury.

BY THE COURT: Overruled.

MOTION OVERRULED, to which ruling of the Court, the plaintiff, Clarence Egerton, by counsel, excepted."

■ We believe the injection by Gentry of the fact that Egerton had insurance may have had a prejudicial effect on the jury and consequently could have prevented Egerton from obtaining a fair trial. We have often said that the consequence of such information is well known in that it is often sufficient of itself to require the granting of a new trial. Dunaway v. Darnell, Ky., 302 S.W.2d 122; Star Furniture Co. v. Holland, 273 Ky. 617, 117 S.W.2d 603. Since all attorneys know the rule of this court in regard to this character of evidence, we hold that the trial court should have sustained Egerton's motion to discharge the jury. Hence, for this reason alone we conclude that Egerton is entitled to have the judgment granting awards to Mary Nell Peak, as mother and next friend of Connie, Tammy and Cindy Peak, set aside and a new judgment entered granting him a new trial, pursuant to CR 59.01, on the issue of damages.

The question of whether the awards made to the Peak children are excessive is specifically reserved.

The judgment in favor of Mary Nell Peak, as next friend of Connie, Tammy and Cindy Peak in the sums of $3,586.30, $3,310.00 and $2,176.00 is reversed with directions to set it aside and grant Gentry a judgment n. o. v. in his favor and with further directions to grant Egerton a new trial limited to the issue of damages.

All concur.