**Randolph KILLMAN et al., Appellants,**

**v.**

**H. C. TAYLOR et al., Appellees.**

Court of Appeals of Kentucky.

March 6, 1970.

Rehearing Denied June 5, 1970.

John B. Anderson, Owensboro, Clay Hundley, Jr., Tompkinsville, for appellants.

Allen Schmitt, Louisville, J. Henry Gibson, Paul Miller, Gibson & Miller, Hardinsburg, for appellees.

CULLEN, Commissioner.

In the rural intersection of north-south arterial highway No. 105 with inferior east-west highway No. 108, around noon on a clear, dry day in August, the westbound Ford car of Mrs. Avis T. Taylor was struck by a southbound loaded log truck driven by Artha R. Decker. Mrs. Taylor and her 14-year-old daughter Vicki were injured. Mrs. Taylor's 12-year-old daughter Jean Marie was killed, as was Decker.

The instant action for damages was brought by Mrs. Taylor, Vicki, and the ad-

ministrator of Jean Marie's estate against Decker's administrator and Decker's employer. There was no counterclaim (because the liability carrier on the Taylor automobile previously had settled claims asserted by Decker's administrator and Decker's employer). The case went to the jury, which found against Mrs. Taylor on her claim (on the ground of her contributory negligence) but awarded $2,500 to Vicki and $20,000 to Jean Marie's administrator. Judgment was entered accordingly. The defendants have appealed, maintaining that they were entitled to a directed verdict because there was no evidence to sustain a finding that Decker was guilty of any negligence that was a proximate cause of the accident. Secondarily, they complain of error in the instructions.

We shall state the facts according to the evidence most favorable to the appellees, since that is the basis on which we must approach the question of whether the appellants were entitled to a directed verdict.

The two highways intersected substantially at right angles. Both highways were paved and the paved surface of each was 20 feet in width. There was an arterial stop sign on Highway No. 108 around 60 feet east of the intersection. However, there was a combination grocery store and filling station at the northeast corner of the intersection which was so situated that a motorist stopping at the stop sign had no appreciable view to the north on Highway No. 105. A clear view was available to the north from a point around 30 feet east of the intersection, but traffic could be seen on Highway No. 105 only for 300 feet north of the intersection, because there was a curve there in Highway No. 105.

Mrs. Taylor stopped at the stop sign but could not see to the north on Highway No. 105 so she moved forward two car lengths (about 36 feet) and then stopped again. At this point she could see 300 feet to the north on Highway No. 105. She looked to the north and saw no approaching vehicle. She then moved *slowly* into the intersection and had proceeded so far that the front of her car had cleared the intersection when the rear of her car was struck by the log truck. The log truck approached the intersection at a speed of around 50 miles per hour and at no time did it slow down or change its course.

■ Analyzing the evidence, we observe that the log truck, traveling at 50 miles per hour, would cover the distance of 300 feet, from the curve to the intersection, in about four seconds. Mrs. Taylor's car, starting from a stop at a point around 30 feet east of the intersection and moving forward to a point where the front of the car had cleared the 20-foot width of the intersection, a total distance of some 50 feet, very well would have taken at least four seconds, at slow speed, to cover that distance (two seconds at five miles per hour for 15 feet, and two seconds at ten miles per hour for 30 feet). A reasonable conclusion from this evidence is that when the log truck first rounded the curve, 300 feet from the intersection, Mrs. Taylor was moving toward the intersection, and her continued movement, into and across the intersection, was in plain view of Decker for the full 300 feet he traveled from the end of the curve to the point of collision. When the Taylor car was struck it lacked a distance of only eight feet or so of clearing the intersection, which would have been accomplished in a second or less of time. If Decker, by the time he had approached within 100 feet of the intersection, simply had reduced his speed to 25 miles per hour, he would have given Mrs. Taylor the time she needed to clear the intersection.

Under those circumstances, can it be said, as the appellants maintain, that Mrs. Taylor's negligence was the *sole* proximate cause of the collision and that Decker was guilty of no negligence that was a proximate cause of the collision? We are convinced that the answer is "No"; however, there are suggestions of inconsistency in some of our previous holdings in this area,

so some effort at clarification may be desirable.

The specific type of case with which we are concerned involves a collision between a motor vehicle on a through highway and a motor vehicle entering upon that highway from an inferior highway or a private entrance. The particular question is whether the operator of the vehicle on the through highway can be held guilty of negligence constituting a proximate cause of the collision, so as to render him liable to a *passenger* in one car or the other, or so as to bar his own claim for damages. We are not concerned here with the question of the *other* driver's negligence, which ordinarily has been found to exist as a matter of law.

In one group of cases, which we shall call "Group A," this court held that the negligence of the driver who entered upon the through highway was as a matter of law the *sole* cause of the collision. In that group are Vaughn v. Jones, Ky., 257 S.W. 2d 583; Chambliss v. Lewis, Ky., 382 S.W. 2d 207; Riggs v. Miller, Ky., 396 S.W.2d 69; Davidson v. Davidson, Ky., 412 S.W. 2d 221; and Tooke v. Adkins, Ky., 418 S. W.2d 220.

In a second group of cases, "Group B," we held that there was a jury issue as to whether the driver of the vehicle on the through highway was guilty of negligence constituting a proximate cause of the collision. In that group are Metcalfe v. Hopper, Ky., 400 S.W.2d 531; Tilford v. Garth, Ky., 405 S.W.2d 6; Browning v. Callison, Ky., 437 S.W.2d 941; Indianapolis & Southeastern Trailways, Inc. v. Blankenship, Ky., 444 S.W.2d 267; and Ellison v. Begley, Ky., 448 S.W.2d 371.

In the opinions in a number of the "Group B" cases we undertook to distinguish the "Group A" cases. For example, in *Tilford* the court distinguished *Vaughn, Chambliss, Riggs,* and *Davidson* on the ground that in those cases "the speed and proximity of the vehicle on the superior highway when the other one entered made it obvious that the driver with the right-

of-way did not have time to avoid the collision." The court said that whether the negligence of the other driver is the *only* proximate cause depends on whether the driver on the through highway "has reasonable time and opportunity to avoid the collision after he is able to apprehend the negligence of the first motorist." Again, in *Browning,* the same distinction was made, and this court said:

> "The motorist on the favored highway is favored, but he is not absolved from keeping a lookout ahead to see if another vehicle is in or about to enter an intersection; he may assume ordinarily that non-favored travelers will yield the right-of-way, but there is a point in time and circumstance when a favored motorist is no longer warranted in indulging such an assumption and, if that issue is presented, a jury question also is presented. * * *."

In *Blankenship,* in distinguishing the "Group A" cases, this court said that "those cases do not represent fact situations in which this court felt that a jury could reasonably have found that in the exercise of reasonable care the driver with the right-of-way could have avoided the accident after observing the negligent course of action being taken by the other driver."

We believe that in the main the stated ground of distinction is valid, although to be strictly accurate the statement should be in terms of what the ordinary prudent man would or could observe and what he would or could do in the exercise of ordinary care. However, we must admit that in both *Chambliss* and *Riggs,* while the evidence preponderated that the driver on the favored highway was so close, when the other driver entered the highway, that he did not have reasonable time and opportunity to avoid the collision, there was evidence to the contrary which under the present view of the court would have made a jury issue. It appears that this court has been tending to tighten up a little on the

duties of the driver on the favored highway. It is doubtful that the decisions in *Chambliss* and *Riggs* would hold today on their facts.

We believe also that there may have been some unsoundness in the statement in *Chambliss* that "where the approaching car on the arterial highway was in view for an unlimited distance, the speed of the approaching car cannot be considered to be a causative factor." Upon further reflection it is our opinion that if, at the time it became apparent that the motorist on the inferior highway was not going to yield, the motorist on the favored highway was at a distance from which, if he had been traveling not in excess of the lawful speed, he would have had reasonable time and opportunity to avoid the collision, but he was in fact traveling in excess of the lawful speed, by reason of which he did not have reasonable time or opportunity to avoid the accident, his excessive speed may be considered a proximate cause. We observe that the statement in *Davidson*, that under the circumstances of that case speed was not a proximate cause, was correct, because the circumstances were that the favored car was only two or three car lengths from the intersection when the other car entered it.

The view we have just expressed as concerns the causative effect of excessive speed provides full justification for the decision in *Ellison*, where the motorist on the favored highway was traveling 15 miles per hour in excess of the speed limit; and it removes the possible basis for criticism of *Ellison* that it could be interpreted as having been decided on the questionable proposition that a distance of only 100 feet, for a motorist going 45 miles per hour, can provide reasonable time and opportunity for him to perceive, react and act to avoid an accident.

It is our conclusion that the evidence in the instant case created a jury issue as to whether an ordinary prudent man, in Decker's position, after it would have become apparent to him, in the exercise of ordinary care, that the Taylor car was not going to yield the right-of-way, would have had reasonable time and opportunity to avoid the accident. Accordingly, the appellants were not entitled to a directed verdict.

The appellants' second ground of error is that the trial court erred in giving an instruction that was "tantamount to a last clear chance instruction." The instruction in question *conditioned Decker's right-of-way* upon his being so near to the intersection, when Mrs. Taylor entered it, that in the exercise of ordinary care on his part he could not stop or slow down the truck so as not to collide with the Taylor car. The instruction clearly was erroneous, under KRS 189.330(4), as to the right-of-way as between Decker and *Mrs. Taylor*. However, the jury found against Mrs. Taylor, so as to her claim there was no prejudice to the appellants in the instruction. As to the claims of the two appellees here (the *passengers*) the instructions in substance stated the correct basis of liability of Decker to them. That basis, as we hereinbefore have outlined it, is very similar to the last-clear-chance doctrine of discovered peril. (The distinction as to liability between the two *drivers* lies in the fact that a driver has chances that the passengers do not have.) We find no prejudicial error in the instructions.

The appellants claim, as their last ground of error, that the trial court should have instructed the jury that "one will not be heard to say that he did not see an approaching vehicle which was in plain view." It is a sufficient answer to point out that this instruction would have had significance only as a basis for finding Mrs. Taylor negligent, and the jury did find her negligent.

The judgment is affirmed.

All concur except OSBORNE, J., who dissents.

OSBORNE, Judge (dissenting).

I dissent in this case for the reason stated in my dissent in Webb Transfer Lines v. Taylor, Ky., 439 S.W.2d 88, 96. It is my belief that the majority opinion repeals in part KRS 189.330 and overrules Chambliss v. Lewis, Ky., 382 S.W.2d 207 (1964). In effect, the Webb Transfer case, supra, overruled the Chambliss case, supra, but there the court refused to say so. The majority opinion here intimates that this may be true but does not spell it out. I realize the law is not an exact science but I fail to see the need for the confusion that is being created upon this subject and until such time as I can be convinced otherwise I will continue to follow the clear mandate set out in KRS 189.330 (4, 5, & 7) and require the driver of a vehicle entering a highway from the private roadway or driveway or secondary road to yield the right-of-way to the vehicle upon the primary highway.

For the foregoing reasons, I respectfully dissent.