Loretta HAMMITTE, Administratrix, Estate of Arlie Hammitte, Plaintiff-Appellant,

v.

Chester LIVESAY and Ralph Carl Lynch, Defendants-Appellees.

No. 20195.

United States Court of Appeals, Sixth Circuit.

Jan. 20, 1971.

James S. Greene, Jr., Harlan, Ky., for plaintiff-appellant; Greene & Forester, Harlan, Ky., on brief.

William A. Watson, Middlesboro, Ky., for defendants-appellees; Watson & Watson, Middlesboro, Ky., on brief.

Before WEICK and McCREE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Plaintiff-appellant appeals from a judgment for defendants-appellees, entered upon a jury verdict. The action had been commenced by the now deceased Arlie Hammitte, charging that he had been injured when an automobile in which he was a passenger came into collision with a truck being driven by defendant-appellee Lynch, in the course of the latter's employment by defendant Livesay. Two issues were submitted to the jury—whether the driver of the Hammitte automobile had been guilty of contributory negligence—and whether Arlie Hammitte suffered any injuries as a result of the collision. The District Judge told the jury that defendant Lynch was guilty of negligence as a matter of law. The jury's verdict merely recited "We, the jury, find for the defendants Chester Livesay and Ralph Carl Lynch," without indicating whether the verdict was the product of a finding that Hammitte's driver was guilty of contributory negligence, or that Hammitte suffered no injuries, or both.

The errors charged by the appellant are first, the refusal of the District Judge to tell the jury:

"The court instructs the jury as a matter of law that the defendants Chester Livesay and Ralph Carl Lynch are liable in damages to the plaintiff Arlie Hammitte for any injuries to his person and property which he may have sustained in the motor vehicle collision described in the evidence of this case."

and second, his giving of the following instruction:

"The defendants have interposed two defenses to the plaintiff's claim: First—they contend that the plaintiff's driver had the last clear chance to avoid the injury; i. e., that regardless of the negligence of the defendants, the plaintiff's driver, Earl White, could have avoided said collision, had he exercised ordinary care after he saw the truck driven by defendant Lynch, or by the exercise of ordinary care could have seen said truck in a position of peril upon the highway.

\* \* \* \* \* \*

"If the jury believe that Earl White, the driver of the Hammitte car, saw or by the exercise of ordinary care could have discovered defendant's motor truck coming onto the highway in time to have avoided colliding with same, by use of the means at his command or within his control, had he exercised ordinary care after he saw or could have seen said truck in a position of peril on the highway, then you will find for the defendants; but unless you so believe, you will find for the plaintiff."

We are of the view that appellant was entitled to the instruction requested and that it was error to give the so-called "last clear chance" instruction. The action was started in the Circuit Court of Harlan County, Kentucky, and was removed to the United States District Court for the Eastern District of Kentucky. Kentucky law controls.

We reverse and remand for a new trial, limited to the question of damages, if there were any caused by the collision.

The collision occurred on October 13, 1966, on highway U.S. 421 in Harlan County, Kentucky. At the scene of the accident, U.S. 421 is 19 feet wide and runs in a straight north and south direction. The accident happened in clear daylight, and a motorist coming into such highway from the west had a clear view to the south for a quarter of a mile. Also, at that point a mine road angled dead into highway 421 from the east-southeast, making a Y intersection. This mine road led to a mine from which defendants were hauling coal on the day of the accident. The following is an account of the happenings prior to and at the time of the collision.

The automobile, owned by decedent Hammitte, and being driven by his friend, Earl White, was proceeding northward on U.S. 421. There was a 60 mile per hour speed limit, and there is no evidence of excessive speed in White's driving. As he approached the area of the mine road, he was following a truck also going north. When this truck indicated its intention to turn left onto the west shoulder of the highway, White reduced his speed to about 35 or 40 miles per hour. This truck, referred to sometimes as truck number two, continued north on the west shoulder and came to a stop close to the rear of the truck then being driven by defendant Lynch, which had also pulled onto the west shoulder of the highway and stopped. Lynch was obviously planning to turn across highway 421 and proceed easterly into and along the mine road. Lynch testified that prior to moving out to cross the highway, his view to the south was impaired by the truck which had pulled up in back of him on the west shoulder. Lynch admitted that without taking any further look, he proceeded to cross the highway and at no time saw or looked in the direction of the Hammitte vehicle approaching from the south. The driver and passengers in the Hammitte car saw Lynch pulling onto the highway and into their path when they were about 35 to 50 feet from the eventual point of impact. The driver first blew his horn and then, in the same instant, realizing that Lynch was not going to stop and his own car could not be stopped in the distance still available to him, put his foot on the accelerator, wrenched his car to the right and tried to pass in front of the crossing truck. His right wheels had gotten partially onto the east shoulder but the right front of the truck hit the left rear door of the Hammitte car, "creasing the door" and bending the fender over the left rear wheel. The Hammitte car's right wheels were in the right ditch, or shoulder, as it proceeded about 100 feet down the road before stopping. Damage to the Lynch truck was consistent with this description of the collision. Our study of the testimony convinces us that the evidence would not justify a factual inference of any conduct on the part of plaintiff's driver less careful than our description of it.

The briefs before us appear to concede that under Kentucky law and the facts of this case negligence of the driver of the Hammitte automobile, Earl White, would be attributable to plaintiff's decedent and bar recovery. We are satisfied, however, that a factfinder, judge or jury would, under Kentucky law, not be warranted in finding White guilty of contributory negligence. In a colloquy after the close of proofs, the District Judge said that defendant Lynch was guilty of negligence that was a proximate cause of the accident. He also disclosed doubts as to the propriety of submitting the question of contributory negligence of the plaintiff's driver to the jury. Defense counsel then, and as he does in his address to us, posited a right to have the question submitted by urging that the jury had the right to disbelieve plaintiff's witnesses and to *create* evidence that would convict the driver White and his passenger, Hammitte, of misconduct. They say here:

"The jury could well have believed, therefore, that the Hammitte witnesses had put together an unbelievable story and the jury may then have cho-

sen, correctly we think, not to believe it.

"Certainly the jury must have wondered at the unexplained silence of Arlie Hammitte as his car drove up the highway that day and he gave not a word of warning to his own driver about the mine road which was ahead of them, and the possibility that the trucks which had stopped off the left side of the highway might just intend to turn into that mine road."

█ The jury could, of course, disbelieve parts of the testimony of plaintiff's witnesses if such testimony was opposed by contrary testimonial or physical evidence or was inherently incredible. Such, however, was not the case. The burden of proving contributory negligence of White or Hammitte was on the defendant. Mitchell v. United States, 396 F.2d 650, 651 (6th Cir. 1968); Rules 8.03 and 43.01, Ky.R.Civ. P. We are aware that in testing whether a verdict should be directed against a party carrying the burden of proof, the relevant evidence must be considered in the light most favorable to the party carrying such burden. Metcalfe v. Hopper, 400 S.W.2d 531, 534 (Ky.1966). Obeying such rule, we nevertheless consider that the issue of Earl White's contributory negligence should not have been submitted. Notwithstanding his expressed doubts, the District Judge was persuaded, apparently as a compromise, to give the instruction above set out using the last clear chance rule with what was likely a correct statement of the rule applicable to the duty of a driver on a favored highway when he sees another negligently enter such highway from the side. Such use of the last clear chance rule was a procedural novelty, but condemnation of such use is not necessary to our decision.

█ We believe that, purged of its reference to last clear chance, the District Judge correctly recited Kentucky law in his instruction on contributory negligence. Metcalfe v. Hopper, *supra*, 400 S.W.2d 531, 534 (Ky.1966); Brown-

ing v. Callison, 437 S.W.2d 941 (Ky. 1969); Swartz v. Humphrey, 437 S.W. 2d 750 (Ky.1969); Webb Transfer Lines, Inc. v. Taylor, 439 S.W.2d 88 (Ky.1969); Ellison v. Begley, 448 S.W. 2d 371 (Ky.1969). It is the rule of these cases that even though a motorist on a favored highway has the right to assume that other vehicles will not negligently enter the highway, the favored driver cannot heedlessly proceed after he has become aware of the danger that has been presented by the first wrongdoer. We believe, however, that there are no facts in this record upon which to convict Earl White or Hammitte of such heedlessness.

In Gentry v. Peak, 436 S.W.2d 785 (Ky.1969) the Kentucky Court dealt with a fact situation whereby a defendant suddenly attempted a left turn across the path of an oncoming vehicle, causing a collision. The vehicle that cut across was driven by Egerton; the other driver was Gentry. Passengers in the Egerton car sued him and Gentry and obtained a jury verdict against both. The Court of Appeals of Kentucky held that a verdict should have been directed for Gentry, saying:

"As concerns Gentry, the evidence fails to establish any negligence on his part. Gentry, testified when he saw Egerton was 'going to cut across the road' their automobiles were then about 125 feet apart; that he applied his brakes and skidded his automobile 60 feet in his traffic lane trying to avoid the accident.

"It is uncontradicted that Gentry was operating his automobile at a lawful rate of speed in his traffic lane and was keeping a proper lookout. We hold that he had a right to assume that Egerton would not abruptly drive across the highway in front of him since obviously this could not be done with reasonable safety. Therefore, we conclude as a matter of law that under Egerton's own testimony it was his negligence alone that caused the collision." 436 S.W.2d at 787.

In Davidson v. Davidson, 412 S.W.2d 221 (Ky.1967), the Court dealt with the following factual situation:

"Early in the afternoon of April 4, 1962, the Davidsons were driving westward on U.S. Highway 421 toward Frankfort from Lexington. It was a clear, dry day. As they approached the point where U.S. 62 intersects U.S. 421 from the south, just north of the town of Midway in Woodford County, they observed Simpson's car stopped on the intersecting road to their left. Expecting it to remain so until he had passed, Walter Davidson continued ahead, but when he had reached a point 'two or three car lengths' from the intersection the Simpson car pulled across in front of him and the Davidson car struck the right side of the Simpson car 'just behind the lock on the front door.' Davidson said he blew his horn and applied his brakes immediately before the collision." 412 S.W.2d at 221–222.

There, as here, it was claimed that the jury could properly find that the defendant could have taken steps to avoid the collision after the other car had come into his path. The Court said:

"The evidence that Davidson was within two or three car lengths of the intersection when he did so [discover the intruding motorist] was not contradicted. Under such circumstances Davidson's speed was not a proximate cause of the collision. Chambliss v. Lewis, Ky., 382 S.W.2d 207 (1964).

" * * * It is our opinion that as *a matter of law* Davidson's speed, whatever it was, was not a proximate causal factor and that Simpson's negligence was the sole cause of the accident." 412 S.W.2d at 222–223. (Emphasis supplied.)

We are satisfied that Kentucky courts would hold that a jury should not be allowed to speculate whether plaintiff's driver, Earl White, might, should, or could have done something to overcome the hazard caused by Lynch's negligence. See also Chambliss v. Lewis, 382 S.W. 2d 207 (Ky.1964); Riggs v. Miller, 396 S.W.2d 69, 72 (Ky.1965).

Our holding in this regard makes it unnecessary to consider whether the last clear chance doctrine may be used to permit a jury to convict a plaintiff of contributory negligence. This doctrine has been employed to allow an injured plaintiff to recover, notwithstanding that his negligence was a contributing cause of his exposure to injury, if a defendant failed to employ an opportunity still available to him after he discovered the plaintiff in a situation of inextricable peril. See Prosser, Law of Torts, § 52 (2d Ed.1941); Restatement (Second) of Torts, § 479; 65A C.J.S. Negligence § 136.

Defendant made an issue as to whether the plaintiff's decedent suffered any injuries as a result of the "shaking up" that he experienced in the accident. There was evidence that Arlie Hammitte became totally disabled by a back condition which had developed long prior to the accident in question. The complaint charged an aggravation of the condition whereby his pain was greatly increased. Defendant argues that the jury's verdict could and should be read as a finding that Hammitte suffered no damages and the judgment should, accordingly, be affirmed. He asks us to read the United States Supreme Court's decision in Flournoy v. Lastrapes, 131 U.S.Append. clxi, 25 L.Ed. 406 (1879), as calling for such holding. There, in a diversity suit to quiet title, a jury returned a verdict for defendant. In sustaining the judgment the Court said:

"The third assignment is, that the verdict of the jury was too vague and indefinite. The verdict was 'for the defendant.' This is equivalent to a special finding in favor of the defendant upon each and every one of the issues tried, and authorizes any judgment that could be entered on such a

finding." 131 U.S.Append. clxii, 25 L.Ed. at 407.

Whatever the issues in that case and the practice then and there in vogue, we are satisfied that the above interesting language does not control the practice in a diversity case tried in 1969 in a United States District Court located in Kentucky. Neither is it controlling here. The District Judge submitted two forms of verdict—one for the plaintiff with an award of damages, or "We, the jury find for defendants." No special questions or interrogatories were requested or submitted.

Kentucky follows the rule, set out in 5 Am.Jur.2d, Appeal and Error, § 787 at p. 299, that:

"Where the verdict is general and there is a showing of error prejudicially affecting one of the various grounds of action or defense presented, the verdict must generally be set aside since no determination can be made as to which of the issues or defenses the jury relied upon in reaching its verdict." Mason v. Stengell, 441 S.W.2d 412, 417 (Ky.1969).

■ Speculation could indeed lead to a conclusion that the jury's verdict was the product of their belief that the plaintiff was not hurt in the accident. There was strong medical and lay evidence that would tend to support such speculation. It would be difficult to believe that under the admitted facts of the casualty here a jury would turn away this plaintiff if he had been seriously injured. The appendix discloses that the jury was out but twenty minutes before returning their verdict. But this Court cannot dispose of the matter on the basis of such speculation. Upon retrial, the defense will have another opportunity to challenge the claim of injury.

The judgment of the District Court is vacated and the cause is remanded for a new trial, limited to the question of damages, if any.