Harold L. CHARLTON, Administrator of the Estate of Ricky Shane Charlton, Deceased, Appellant,

v.

Onetia P. JACOBS and Bobby H. Jacobs, Appellees.

and

Onetia P. JACOBS and Bobby H. Jacobs, Appellants,

v.

Harold L. CHARLTON, Administrator of the Estate of Ricky Shane Charlton, Deceased, Appellee.

Court of Appeals of Kentucky.

May 1, 1981.

Discretionary Review Denied Aug. 25, 1981.

Charles A. Williams, Rodger W. Lofton, Williams, Housman & Sparks, Paducah, for appellants in No. 2171 and appellees in No. 2180.

Thomas B. Russell, Whitlow, Roberts, Houston & Russell, Paducah, for appellees in No. 2171 and appellants in No. 2180.

Before HAYES, C. J., and LESTER and WINTERSHEIMER, JJ.

LESTER, Judge.

These two appeals were taken from a trial order and judgment of August 24, 1979, wherein the circuit court entered a

directed verdict against the defendants as to liability and the jury awarded the plaintiff $50,000 as damages for the death by wrongful act of the decedent. The tortfeasor complains of the judgment as to liability while the administrator deems the award to be inadequate.

On May 11, 1978, Ricky Charlton was operating his motorcycle in a southbound direction on four-laned Lone Oak Road (U.S. Route 45) in the inside lane at a point immediately next to or behind a pickup truck driven by one Dale Grimm which was traveling in the same direction in the outside corridor. Lone Oak intersects with Clinton Road at which point the Clinton traffic is controlled by a stop sign while Lone Oak is a through highway. The approach on Clinton to the point of the traffic control device is that of a curve to the right and up a hill. Onetia Jacobs was driving her pickup truck on Clinton, came to a stop sign and did stop. She was familiar with both roads, the intersection and the fact that Lone Oak was heavily travelled. At the intersection, Jacobs could see the Grimm truck approaching from her left in the lane closer to Clinton with its right turn signal on indicating it was about to enter Clinton and when it started to actually do so, she pulled out into the intersection and struck the motorcycle which was southbound in the median lane of U.S. 45. Mrs. Jacobs said she was unable to observe Charlton due to his position which was either to the far side of the Grimm vehicle, or behind and to the side of it. Jacobs admitted she was aware of a blind spot behind the Grimm truck. Ricky died as a result of the collision.

It is evident from answers to the interrogatories filed by the estate approximately a month and a half after commencement of this action that the case had as its statutory basis KRS 189.330 dealing with right-of-way at an intersection. Based upon cases decided applying that provision, the court directed a verdict against Jacobs as to liability and submitted the issue of damages, under proper instruction, to the jury. We will deal with the two appeals in the same order.

*NO. 80–CA–2180–MR*

Appellants, the Jacobs, urge that it was for the jury to determine if Mrs. Jacobs exercised ordinary care when she stopped, observed the Grimm truck about to turn into Clinton (but did not see decedent because of that truck) and then pulled out into the intersection striking Charlton. In support of their views, appellants cite to KRS 189.380 governing vehicles using signals when moving right or left or when turning. In support thereof, they rely upon *Compton v. Johnson,* Ky., 522 S.W.2d 448 (1975), which is not a KRS 189.330 case. Appellee relies upon *Killman v. Taylor,* Ky., 453 S.W.2d 574 (1970), which categorized the intersection cases, and *Capps v. Violett,* Ky., 488 S.W.2d 695 (1972). *Killman* speaks of a group ("A") of opinions wherein the driver upon the superior thoroughfare was guilty of no negligence thus making the operator entering the intersection causing a collision liable as a matter of law. *Capps* is remarkably similar to the case at bar with the exception that the second vehicle was an automobile instead of a motorcycle and it changed lanes in order to go to the left of the turning car. In *Capps,* a directed verdict was held to be proper as to the liability of one entering from the inferior street.

■ We are not unmindful of the principle that the right of the automobile on the superior highway is qualified, thus not absolute, *Clark v. Johnston,* Ky., 492 S.W.2d 447 (1973), *Daulton v. Reed,* Ky., 538 S.W.2d 306 (1976), and the injection in some of these cases of the ordinary care factor into instructions thus suggesting that directed verdicts are improper, but nevertheless, *Capps,* remains unmodified and unreversed. The distinguishing point between the last mentioned case and the others is that there has been competent evidence indicating some contributory negligence on the part of the superior driver which requires submission to the jury, but the present litigation does not present such a situation.

■ What occurred in the instant case was that Mrs. Jacobs came to an intersection and observed a higher than usual (the

Grimm truck was elevated more than normal due to 35″ tires on 16″ rims) pickup truck in the lane nearest her with its right turn signal on and as it started to so turn, she pulled out into the southbound lanes. What Mrs. Jacobs actually did was enter into a superior highway, a portion of which she could not see, namely, that area which was blocked from her view by the large Grimm truck. In this day of subcompact cars, we dare say such a vehicle could have blocked out a Honda, Volkswagon, etc. A reasonable person would have and should have waited until she could have seen the entire highway to her immediate left before entering the intersection. Upon review, we do not believe the trial judge acted improperly in directing the verdict.

■ Appellants complain that certain testimony of the investigating state trooper was improper as being an opinion as to the causative factor of the accident which was for the jury to determine. Since the circuit court directed a verdict as to liability, and we have concluded correctly so, the issue has become moot.

The judgment in No. 80–CA–2180–MR is affirmed.

### NO. 80–CA–2171–MR

In this appeal, the administrator argues that the trial court improperly permitted counsel for the defendant to suggest improper elements as to the measure of damages to the jury, both in cross-examination and in final argument.

The appellant introduced the testimony of an expert witness, an economist, in order to establish damages by showing what the reasonable compensation to the estate should be for the destruction of decedent's power to earn money. Over the objection of appellant, appellee was allowed to inquire about the expert's taking into consideration what Ricky Charlton might have expended for food, clothing, utility bills, gasoline, cars and income taxes, or, in other words, items of personal consumption. Since appellee, by way of brief, treats "[a]ny taxes that Ricky Charlton would have paid throughout the remainder of his life are matters of personal consumption",

we shall do likewise and deal with all the elements collectively.

■ The majority rule is to the effect that personal consumption items should be taken into consideration and any award in a wrongful death action should be reduced thereby. 22 Am.Jur.2d *Death* § 153, and 25 A C.J.S. *Death* § 101 at 908, 910. However, Kentucky is in the minority, and possibly a minority of one, subscribing to the contrary principle, D. Dobbs, *Remedies* § 8.5 at 556, for in *West Kentucky Coal Co., et al. v. Shoulders' Administrator*, 234 Ky. 427, 436, 28 S.W.2d 479 (1930), it was said:

> This court has held repeatedly that the jury should be instructed only to the effect that the measure of damages in a death case is such sum as will reasonably compensate the estate of the decedent for the destruction of his power to earn money; (Citation omitted) and that tribunal should not be told that the loss is the amount which would probably be made and saved but for the intervening death. (Citation omitted). In *Louisville & N. Railroad Co. v. Morris' Adm'r*, 20 S.W. 539, 540, 14 Ky. Law Rep. 466, in answer to the contention that the damages are limited to what the party entitled to them has been injured by the death, and that this means what the decedent would have accumulated or saved, *after deducting his living expenses*, this court said:
>
> "A court could not well enter into such an inquiry. It would at least involve an investigation of the condition in life of the decedent, and it seems to us to embark the court upon a sea of speculation almost without limit" (emphasis added). See also *Lexington Utilities Co. v. Parker's Administrator*, 166 Ky. 81, 178 S.W. 1178 (1915), and cases cited therein.

■ Appellees attempt to distinguish the cases by stating that they prohibit instructing the jury on personal use reductions in awards, but we see no difference in a court discussing the items with the panel through the medium of instructions and counsel for a defendant being permitted to discuss them through cross-examination and final

summation. We say this because the end result would be the same as typified by this case for the expert placed decedent's future earnings between $200,000 and $276,000 while the jury returned an award of but $50,000. Accordingly, we now hold that since the circuit court cannot instruct a jury on personal use reductions in reaching an award, then counsel should not be permitted to make any reference whatsoever thereto at any stage of the proceedings. Appellees' citation of federal cases shows diligence on their part but we are not bound thereby. The judgment will be reversed as to the trial for damages with instructions that the trial court prohibit any reference to decedent's items of personal consumption.

The judgment in appeal No. 80–CA–2171–MR is reversed with directions to grant a new trial as to damages in conformity with the views expressed herein.

All concur.