**Genoa BRITTON, Movant,**

**v.**

**L. Wayne WOOTEN, d/b/a Wooten's Pic Pac and Wooten's Grocery Company, Inc., Respondents.**

**L. Wayne WOOTEN, d/b/a Wooten's Pic Pac and Wooten's Grocery Company, Inc., Cross–Movants,**

**v.**

**Genoa BRITTON, Cross–Respondent.**

Nos. 90–SC–320–DG, 90–SC–497–DG.

Supreme Court of Kentucky.

Oct. 24, 1991.

John David Preston, Michael D. Osborne, Perry & Preston, Paintsville, and Don A. Bailey, Louisa, for Britton.

Eldred E. Adams, Jr., Adams & Adams, Louisa, and John A. Webb, Ashland, for Wooten.

LEIBSON, Justice.

On May 8, 1983, Wooten's Pic Pac Grocery in Louisa, Kentucky, was destroyed by fire. A portion of the grocery store premises consisted of a building owned by the movant, Genoa Britton (the lessor), and leased to L. Wayne Wooten d/b/a Wooten's Pic Pac and Wooten's Grocery Company, Inc. (collectively, the lessee). The movant filed suit against her lessee alleging negligence in the operation of the grocery store. Allegedly, the store employees stacked trash that was flammable, combustible material next to the building all the way up to the eaves, in violation of the fire marshal's regulations and the fire code of the State of Kentucky. Consequently, a fire originating in the trash progressed up the exterior wall to the combustible roof, causing the building to burn to the ground.

The only evidence of record specifically identifying how the fire started was the testimony of Andrew Reed, an arson investigator from the Kentucky State Police, who had investigated the cause of the fire at length. He stated that in his opinion "someone set fire to the paper boxes in or near the dempsey dumpsters." There was testimony from other witnesses that these dumpsters, located next to the building, were overflowing with trash which had been accumulating for days. The arson investigator also opined that the "first part of the building that became involved" was the overhanging exposed wooden eaves "as the fire went up the wall." Thus there was substantial evidence that the fire started in the trash and that the manner in which the trash was accumulated and stored violated portions of the *Kentucky Fire Safety Standard Regulations* 815 KAR 10:020, relating to accumulating combustible waste and refuse, and to disposal of rubbish, from which a jury could reasonably conclude fire safety code violations were a substantial factor in the spread of the fire and the burning of the building. Nevertheless, the trial court rendered Summary Judgment in favor of the respondent. The

primary reason stated for granting the Summary Judgment was that the lease, as a matter of law, contracted away the lessor's right to sue the lessee for the destruction of the premises by fire. This was based on the following provision in the lease:

"8. *Care of Premises*—The Lessee shall take good care of the leased premises, reasonable wear and tear excepted. In the event the leased premises are destroyed by fire or act of God, or so severely damaged as not to be suitable for continued occupancy, the Lessee may surrender this lease without further obligation and this lease shall be cancelled."

The trial court stated that Summary Judgment was mandated by our decision in *Liberty Mutual Fire Ins. Co. v. Jefferson Fam. Fair, Inc.*, Ky., 521 S.W.2d 244 (1975), which it found to be "squarely on point."

In seeking Summary Judgment, the lessee had also relied upon "several general principles of law pertaining to proximate causation" and, more specifically, "that the act of the arsonist in setting the fire was a superseding cause as a matter of law, thereby breaking the chain of causation." In the Summary Judgment the trial court states: "In light of the Court's finding in regard to the Defendants' first argument above ['that the Plaintiff contracted away her right to sue'], there is no need to exhaustively explore these ["further"] issues. The Court, however, finds these additional arguments persuasive and compelling and relies upon same as additional support for granting the motion."

The Court of Appeals affirmed the trial court, stating "[a]lthough we may not agree with the principle espoused in *Liberty Mutual*, nevertheless, we are bound by applicable Supreme Court precedent." Having so decided, the Court of Appeals declined to consider the further "issues concerning proximate causation and superseding cause," stating they "are not subjects of this opinion."

The lessor moved for discretionary review arguing that *Liberty Mutual v. Jefferson Fam. Fair, Inc., supra*, should be distinguished on its facts, and thus should not control the present decision, or if viewed otherwise, it should be overruled, that the lease in this case did not contract away the lessor's right to sue the lessee for the destruction of the premises by fire if the lessee's negligence caused or contributed to cause the spread of the fire and the destruction of the leased premises.

The lessee then filed a cross-motion for discretionary review to preserve his argument that, if the terms of the lease were not a complete defense, then the lessee was still entitled to summary judgment based on principles of proximate causation and superseding cause.

We accepted discretionary review, and, for reasons that follow, we decide for the lessor on both the motion for discretionary review and the cross-motion: in this case neither the terms of the lease nor tort law principles relating to proximate cause and superseding cause insulate the lessee from liability for negligent conduct contributing to the destruction of the leased premises.

## I. THE LEASE

Like the present case, *Liberty Mutual Fire Ins. Co. v. Jefferson Fam. Fair, Inc., supra*, involved destruction of the leased premises by a fire allegedly resulting from the tenant's negligence. However, unlike the present case, in the *Liberty Mutual* case the terms of the lease required the landlord to provide insurance covering the destruction of the premises by fire, such insurance had been purchased, and the plaintiff was not the landlord but the fire insurance carrier which, having paid the loss, sought to hold the tenant responsible for destruction of the leased premises. The Opinion in the *Liberty Mutual* case states "[t]he critical provision of the lease is paragraph 7, entitled 'Insurance, Destruction, Duty to Rebuild,' which provided in part as follows:

(a) 'The Lessor ... will keep the demised premises insured as Lessor's and Lessee's interest may appear ... against loss by fire with full extended coverage ...'

(b) 'If ... the demised premises are totally or substantially destroyed by fire ... Lessee may cancel this lease without further liability whatsoever.... In the event that Lessee does not exercise its right to cancel ... it will immediately amend this Lease, renewing and extending the original term thereof to a full twenty (20) years from the date of the opening of its restored premises for business.... Lessor shall forthwith ... restore said premises to substantially the same condition as existed prior to the casualty.' " 521 S.W.2d at 245.

It should be immediately apparent that, rather than stating a general principle that would apply in the present case, the *Liberty Mutual* case is fact specific. The Opinion stated the obvious:

"Had the tenant been a named insured the fire insurer would have been obliged to pay the loss without regard to the negligent origin. Even though the tenant was not so named, there can be no doubt that the insurance was for its benefit as well as for the landlord's. It assured the means by which the building could be restored if the tenant elected not to terminate the lease. Had it not been for the benefit of both parties there would have been no reason to provide for it in the lease." *Id.*

The insurer was obligated to pay the losses insured without regard to negligence. Because the tenant was *intended to benefit* from the insurance purchased by the landlord, although not a named insured, our Court denied the insurance company's subrogation claim against the tenant for its purported negligence in causing the fire. Thus this lease provision in the *Liberty Mutual* case nullified any right of subrogation on the part of the insurer. There was no similar clause requiring purchase of fire insurance in the present case.

Unfortunately, as sometimes happens in opinion writing, there was summing up language in the *Liberty Mutual* case which misled the lower court and the Court of Appeals in the present case to apply as a general proposition language in that decision which related solely to different terms in the *Liberty Mutual* lease. This language stated the parties

"... agreed that in the event of a destruction of the leased building by fire the tenant could terminate the lease 'without further liability whatever.' 'Whatever,' as we read the word, means 'of any kind'—contract, tort or anything else." 521 S.W.2d at 245.

This sentence is only misleading if one does not consider the *next* sentence:

"This explicit language, in a paragraph directed and confined exclusively to insurance and fire loss, overrides any ambiguity in the words, 'fire and other unavoidable casualty' as used in paragraph 15 of the lease." *Id.*

In the present lease there is no separate paragraph "directed ... to insurance and fire loss" as there was in *Liberty Mutual;* no paragraph requiring the purchase of liability insurance to cover restoring the premises for the protection of both parties, no paragraph similar to Paragraph 7 in the *Liberty Mutual* lease. Here there is no fire insurance clause with "explicit language" which "overrides any ambiguity in the words 'fire and other unavoidable casualty' as used [elsewhere in] the lease," in the paragraph that "required the tenant to surrender the premises at the end of the term in good condition, 'reasonable wear and tear and fire and other unavoidable casualty excepted.' " 521 S.W.2d at 245. On the contrary, in the present case the *only* pertinent paragraph of the lease is Paragraph 8, as follows:

"8. *Care of Premises*—The Lessee shall take good care of the leased premises, reasonable wear and tear excepted. In the event the leased premises are destroyed by fire or act of God, or so severely damaged as not to be suitable for continued occupancy, the Lessee may surrender this lease without further obligation and this lease shall be cancelled."

The title to this paragraph and the first sentence state the purpose of this paragraph. The obligation of the tenant is to "take good care of the leased premises." They also serve as preamble to the remainder of the paragraph. If the first sentence

is to have clear meaning, the second sentence relieving of "further obligation" and cancelling the lease in the event the premises are "destroyed by fire or act of God" cannot mean the tenant has no liability for negligence.

The words of the second sentence in Paragraph 8 relieve the tenant of further contractual obligation under the lease if the "premises are destroyed by fire or act of God, or so severely damaged as not to be suitable for continued occupancy." They do not negate the duty of care established in the first sentence. In context, Paragraph 8 of the present agreement does not exculpate the tenant from liability for damages caused by his negligence, if any there was.

*Prosser and Keeton on The Law of Torts*, § 68 (5th ed. 1984), states the general principles involved: parties may "expressly ... agree in advance that the defendant is under no obligation of care for the benefit of the plaintiff, and shall not be liable for the consequences of conduct which would otherwise be negligent"; but because "public policy" disapproves of exculpating agreements in derogation of tort liability, an agreement should be so interpreted only if it is quite explicit:

> "If the defendant seeks to use the agreement to escape responsibility for the consequences of his negligence, then it must so provide, clearly and unequivocally, as by using the word 'negligence' itself."
> *Id.* at 484.

The second sentence in Paragraph 8 of the present lease falls far short of a clear and unequivocal expression exonerating the tenant from liability from negligent conduct. Tort liability is not eliminated. Considering Paragraph 8 of the lease as a whole, the words in question only relieve the tenant from further contractual obligations. This is the *same* result which would have been reached in the *Liberty Mutual* case but for the overriding language in the "Insurance, Destruction, Duty to Rebuild" clause. There is no similar clause in the present case. Consequently, the summary judgment based on Paragraph 8 of the leased agreement was erroneously granted.

## II. CAUSATION

The Complaint alleges, and the record suggests, that the manner in which the lessee's employees permitted trash and refuse to accumulate and pile up next to the grocery building was in violation of a safety code, 815 KAR 10:020, Sec. 13, and Sec. 11(6). Such violations of administrative regulations, like statutory violations, constitute negligence, per se, and the basis for liability if found to be a substantial factor in causing the result. *Rietze v. Williams*, Ky., 458 S.W.2d 613 (1970) and *Higgins Investment Inc. v. Sturgill*, Ky., 509 S.W.2d 266 (1974).

In *Rietze*, we held a violation of the plumbing code was negligence per se and sustained a finding it was a proximate cause of the resulting injury, stating that such administrative regulations when adopted "have the force and effect of law" and there is "no reason they should be considered differently from statutes or municipal ordinances."

In *Higgins Investment Inc.*, we upheld liability for injury resulting from a fire based on the landlord's negligence in failing to comply with Department of Insurance administrative regulations requiring that apartment dwellings for ten or more occupants have at least two separate exits on each floor. We stated that the jury could find that failure to have a second exit was a "substantial factor" in the tenant's cause of death. The causal connection between the safety code violation and the loss is more attenuated in the *Higgins* case than in present circumstances.

Even if there were no safety code, stacking rubbish and boxes close to a building and too high in the dumpsters, to such extent that if a fire started it would climb the masonry wall to the inflammable material in the roof of the building constitutes acts which might well be viewed as actionable negligence.

At oral argument the respondent conceded there would be no basis for the summary judgment if the proof showed that

the fire started accidentally. The real basis of the respondent's argument is, as stated in his Brief, that "the cause of the fire was an act of arson," "[t]his is and can be the only substantial factor," and the negligent acts of his employees, if any, must be viewed as "an act that only furnishes the occasion of an injury [and] cannot be a proximate cause."

This argument is not a proximate cause argument in the same sense as the cases cited in support of it in the respondent's Brief, because in those cases causal connection is excluded only when the injury or damage sustained was as a result of a separate and unrelated cause rather than a combination of causes. Obviously, to sustain liability there must be a causal connection between the negligent act and the resulting damage, and just as obviously there was the *same* causal connection between the trash stored to the eaves and the resulting damage whether the fire was started in the trash accidentally or intentionally. One of the cases cited in the respondent's Brief, *House v. Kellerman*, Ky., 519 S.W.2d 380 (1975), is indeed a leading case on the subject of causation, but its legal reasoning and its holding is contrary to the respondent's contentions about what the law should be in this case. In it Justice Palmore states:

> "To begin with, literally speaking there can never be only one 'cause' of any result. Every cause is a collection of many factors, some identifiable and others not, all determined by prior events. The law seeks out only the collective cause or causes for which it lays responsibility on some person or persons." *Id.* at 382.

*House v. Kellerman* was a lawsuit premised on the host driver's antecedent negligence causing her car to slide, wherein the defendant argued that such negligence, if any, was superseded by the act of the plaintiff passenger who "awakened instantly and grabbed [the driver's] right arm." The central issue in *House v. Kellerman* was whether, when a superseding cause question is presented, there should be a separate instruction "telling the jury that if the accident resulted from a cause for

which a party was *not* responsible it shall find for the defendant" or whether such instruction "is needless, because it has been instructed elsewhere that it shall find against him only if it believes from the evidence that the cause was one for which he *was* responsible." *Id.* at 382 (emphasis original).

The decision in *House v. Kellerman* was that the trial court erred in instructing the jury separately on superseding cause.

> "The question of whether an undisputed act or circumstance was or was not a superseding cause is a legal issue for the court to resolve, and not a factual question for the jury." *Id.* at 382.

> . . . .

> "If there is no issue as to whether the act or event actually occurred, whether it constituted an independent cause superseding and eliminating the alleged negligence of the defendant as a legal cause should be determined by the court." *Id.* at 383.

*House v. Kellerman* held the intervening act of the plaintiff was *not* a superseding cause as a matter of law, so the case was properly one for the jury to decide under the usual instructions in negligence cases describing the duties of the host driver.

■ If the boxes and trash were piled high against the masonry wall in such a manner as to permit a fire started in the refuse access up the masonry wall to the inflammable roof of the building, undoubtedly this was a proximate cause, or a substantial factor, in the destruction of the building regardless of how the fire started. The proximate cause issue lacks substance, and the respondent really has only one argument, that "the act of the arsonist in setting the fire was a superseding cause as a matter of law."

■ To begin with, at this point the evidence that this fire constituted the crime of arson is far short of overwhelming. As we stated earlier in this Opinion, the only evidence on this subject was from the arson investigator who concluded, "my opinion is that someone set fire to the paper boxes in or near the dempsey dumpsters." Movant

argues that this statement hardly even suffices to prove the fire was set intentionally, let alone sufficient to establish the elements of arson as related in the Penal Code, KRS Chapter 513. Respondent counters that at the time of Summary Judgment both parties and the trial court were operating on the assumption the arson investigator's deposition established that at least the fire in the trash, if not also the destruction or damage to the building, was started as an intentional act. Respondent insists that therefore this appeal should be decided on this same premise. We need not decide this subissue because we reject any all-inclusive general rule that, as respondent contends, "criminal acts of third parties ... relieve the original negligent party from liability."

This archaic doctrine has been rejected everywhere. The only Kentucky case movant cites in support of it *Watson v. Kentucky & Indiana Bridge and R. Co.*, 137 Ky. 619, 126 S.W. 146 (1910), a case over 80 years old. In it the court draws a distinction in the railroad company's liability for a fire ignited following a train derailment and gas spillage on the basis of a fact question presented as to whether the man who ignited the gasoline did so maliciously or inadvertently. That case indeed holds that the railroad company is "not bound to anticipate the criminal act of others by which damage is inflicted and hence is not liable therefor." *Id.* at 151, 126 S.W. 146. The question is whether that case is still viable.

Respondent cites *Restatement (Second) of Torts*, § 448 in support of the continued viability of criminal acts, per se, as sufficient to cut the chain of causation. That section postulates that "an intentional tort or crime is a superseding cause" where the defendant's "negligent conduct" only creates "a situation which afforded an opportunity" for another to commit an intentional tort or crime, but it adds an all important caveat:

"... unless the actor [the defendant] at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

*Restatement (Second) of Torts*, § 449, expands on the meaning of § 448. Section 449 postulates:

"If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor [the defendant] negligent, such an act [by another person] whether innocent, negligent, intentionally tortious, or criminal, does not prevent the actor [the defendant] from being liable for harm caused thereby."

And these two sections, 448 and 449, also must be read in conjunction with *Restatement (Second) of Torts*, § 302B, "Risk of Intentional or Criminal Conduct," which states:

"An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

The fact is that the appendices to the *Restatement (Second) of Torts*, §§ 448 and 449, are replete with numerous cases, perhaps one hundred in number, from throughout these United States, acknowledging the *Restatement (Second) of Torts* §§ 448 and 449 as authority and deciding the negligence of a defendant is actionable as a contributing cause, wherein the immediate cause is a subsequent criminal act. We will not burden this Opinion by trying to cover the field, but we will review four cases because they represent factual situations strikingly similar to the present case:

1) *Arneil v. Schnitzer*, 173 Or. 179, 144 P.2d 707 (1944), affirmed the liability of the property owners where litter in a junk yard created a fire hazard, and a trespasser then started a fire on the premises which spread to adjoining premises. The court states:

"The intervention of a criminal act, however, does not necessarily interrupt the relation of cause and effect between negligence and an injury. If at the time of the negligence, the criminal act might

reasonably have been foreseen, the causal chain is not broken by the intervention of such act." *Id.* 144 P.2d at 714.

. . . .

"We know of no decision which holds that one who maintains his property so negligently that it menaces his neighbors, is liable for the destruction of their premises by a fire which started upon his, only in the event that he himself applied the match. To the contrary, we are satisfied that the owner's negligence is the proximate cause of the damage to the neighbor, even if a stranger communicated the spark. . . ." *Id.* at 717.

. . . .

"One who suspends a sword of Damocles over the head of his neighbor must respond in damages for the consequences if another, allured by the temptation, cuts the tender cord. . . . *Id.* at 718.

. . . .

We are satisfied that when the defendants littered their property with piles of combustible material it was their duty to anticipate trespasses by such persons as Ellis Miller, and also to anticipate that the intruders might cast about lighted tobacco." *Id.* at 718.

2) *d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886 (CCA 9 1977), a wrongful death action. It involved a claim against the manufacturer of acrylic fiber used in carpeting in a hotel, charging the product was highly inflammable and unreasonably dangerous, and as such a contributing cause in the rapid spread of a fire started by an arsonist. The Court states:

"Monsanto [the defendant carpet manufacturer] argues that under Arizona decisions the criminal act of a third person constitutes a superseding cause as a matter of law. While this appears to have been the rule stated in early Arizona cases, more recent decisions apply the general principle of foreseeability to intervening criminal acts." *Id.* at 894.

3) *Mozer v. Semenza*, 177 So.2d 880 (Fla. 1965), another negligence action by guests against a hotel owner for injuries from a fire started by an arsonist. The Court states:

"In the instant case the act of the arsonist was not an 'independent intervening cause.' The scope of defendant's duty to maintain reasonably safe premises does not include a duty to foresee a particular fire but it does include a duty to reasonably guard against the risk of fire. Viewed from this standpoint it is not important to the liability of the appellant whether the fire started in one way or another. . . . We therefore conclude that the record reveals a reasonable basis upon which the jury could find that the injuries to the appellees were proximately caused by the negligent maintenance of appellant's Hotel." *Id.* at 883.

4) *Hodge v. Nor–Cen, Inc.*, 527 N.E.2d 1157 (Ind.App. 2 Dist.1988), holding that the act of an arsonist in setting the fire was not an intervening event which broke the causal connection between the landlord's negligence in failing to provide a second means of egress and the injury occasioned to tenants by inability to escape during the fire. This recent Indiana case is strikingly similar in facts to the Kentucky case, *Higgins Investments, Inc. v. Sturgill*, Ky., 509 S.W.2d 266 (1974) (discussed earlier in this Opinion), with the added factor that, whereas in the *Higgins Investments* case the cause of the fire is unknown (or if known was not set out in the opinion), in *Hodge v. Nor–Cen* arson was positively identified as the factor starting the fire. The Indiana court holds:

"While Nor–Cen correctly states the rule of [*Restatement (Second) of Torts*, § 448], its application of the rule to these facts is faulty. . . .

. . . Fire, whether by accident or design, is not an intervening event which breaks the causal connection between the act of failing to provide a second means of egress and the injury occasioned by the inability to escape; it is merely an event in the chain of causation.

. . . Because the undisputed facts do not negate the elements of a claim of negligence, appellants' claim should have survived summary judgment. . . ." *Id.* at 1161.

The lengthy and authoritative treatise by Harper, James and Gray, *The Law of Torts*, 2d ed. (1986), addresses the point at issue as follows:

"It is often said that an actor may assume that others will act lawfully and carefully. Rightly understood this is sound enough, and no more than a corollary of the general [negligence] principle.... But in this connection two things must be noted. The first is that such an assumption does not always correspond to the facts. It does not in situations where a law is generally disobeyed.... And it does not wherever the actor's [defendant's] conduct exposes some interest to risk from a large and indeterminate group of people that will probably include some who will be negligent or commit crime, so that the likelihood of some negligence or some crime is considerable, though the number of those who will be responsible for it is relative small.... Perhaps the most significant trend that has taken place in this particular field, in recent years, has been the increasing liberalization in allowing the wrongs of other people to be regarded as foreseeable where the facts warrant that conclusion if they are looked at naturally and not through the lens of some artificial archaic notion." *Id.* § 16.12 at 495–96.

And from the same treatise, § 20.5, "Legal Cause," pp. 154–56:

"So far as scope of duty (or, as some courts put it, the relation of proximate cause) is concerned, it should make no difference whether the intervening actor is negligent or intentional or criminal. Even criminal conduct by others is often reasonably to be anticipated."

Parenthetically, Harper, James and Gray back up the above quotations from the treatise with a vast number of cases in point, cases which only serve to supplement the numerous cases found in the appendices to the *Restatement (Second) of Torts* alluded to earlier.

*Seelbach v. Cadick,* Ky., 405 S.W.2d 745, 749 (1966) states:

"... an intervening cause or agency which insulates from liability is [restricted to] 'an independent force, not naturally arising out of or related to the negligently created condition.' ... it is not necessary that the party negligently creating the condition foresee the specific subsequent act in the chain of causation."

This reasoning applies with the same logic to the intentional acts of third persons as to those merely reckless or negligent. We return for further instruction as to what constitutes a superseding cause to the definitive case of *House v. Kellerman,* Ky., 519 S.W.2d 380 (1975), being mindful that in that case the intervening act argued as a superseding cause was that of the passenger in the automobile, who awakened when the car began to slide and grabbed the steering wheel in a "sudden reflex action ... that caused [the defendant/host driver] to lose control of the automobile." This act was *rejected* as a superseding cause. The reasoning in *House v. Kellerman* is that to be a superseding cause the intervening act must be so "highly extraordinary" that antecedent negligence should be ruled out as a matter of law as a substantial factor in causing the accident. *Peterson v. Bailey,* Ky.App., 571 S.W.2d 630 (1978), uses the same reasoning. It is a fire case with a role reversal: the defendant whose negligence started the fire sought to shift sole responsibility to the building owner and the fire department claiming it was their negligent acts after the fire started that actually caused the building to burn down. The Court of Appeals, rejecting the superseding cause argument, held that the failure to take appropriate actions to stop the spread of the fire was not of such "utterly foolhardy or extraordinary" nature as to insulate the liability of the defendant who caused the fire.

In the present case whether the spark ignited in the trash accumulated next to the building was ignited negligently, intentionally, or even criminally, or if it was truly accidental, is not the critical issue. The issue is whether the movant can prove that the respondent caused or permitted trash to accumulate next to its building in a

negligent manner which caused or contributed to the spread of the fire and the destruction of the lessor's building. If so, the source of the spark that ignited the fire is not a superseding cause under any reasonable application of modern tort law.

The Summary Judgment in the trial court is vacated, and the decision in the Court of Appeals affirming it is reversed. The within case is remanded to the trial court for further proceedings consistent with this Opinion.

COMBS, LEIBSON, REYNOLDS and SPAIN, JJ., concur.

STEPHENS, C.J., and LAMBERT and WINTERSHEIMER, JJ., concur in results only.