Gladys **LAUGHLIN**, Appellant,

v.

James E. **LAMKIN**, Appellee.

Paul **LAUGHLIN**, Appellant,

v.

James E. **LAMKIN**, Appellee.

Nos. 1996–CA–002374–MR, 1996–CA–002462–MR.

Court of Appeals of Kentucky.

Sept. 18, 1998.

Mat A. Slechter, Louisville, for Appellant Gladys Laughlin.

Bernard Leachman, Jr., Louisville, for Appellant Paul Laughlin.

R. Brian Evans, Louisville, for Appellee.

Before BUCKINGHAM, GUIDUGLI and JOHNSON, Judges.

*OPINION*

JOHNSON, Judge.

Gladys Laughlin (Gladys) and her husband, Paul Laughlin (Paul) (collectively, the Laughlins), have each appealed from the judgment of the Jefferson Circuit Court entered on June 25, 1996, that followed the jury's verdict on Gladys' claim for damages incurred in an automobile accident the Laughlins allege was solely caused by the appellee, James E. Lamkin (Lamkin). We reverse and remand for a new trial on damages only.

The events that led to the lawsuit occurred on August 25, 1995. The Laughlins were proceeding west on Outer Loop Road (the Outer Loop) in Jefferson County, Kentucky, when their vehicle collided with a pick-up truck operated by Lamkin. At the location of the accident, the Outer Loop is a five lane highway with two lanes for eastbound traffic and two lanes for westbound traffic, and a neutral, turn lane in the middle. The Laughlins told the jury that immediately prior to the accident, Paul was driving west in the inner, or left lane, at a speed less than the 45–mile–per–hour speed limit. As their car approached Knobview Shopping Center on their right, they noticed that the cars in the right lane were slowed or stopped. They testified that without any warning Lamkin pulled out of the shopping center in front of a stopped car in the right lane to turn left and hit the right front side of their car. Paul stated he had no opportunity to avoid colliding with Lamkin.

Lamkin and his passenger, Tim Anderson (Anderson), presented a vastly different version of the accident. They both testified that when they exited the shopping center, the traffic was stopped in both westbound lanes because of a stop light further west at the intersection of the Outer Loop with Old Shepherdsville Road. They claimed the drivers of the vehicles in both westbound lanes to Lamkin's left had stopped to leave enough room to enable him to exit the shopping center and turn left. Lamkin, Anderson, and a third witness, Raymond Beckwith, who observed the accident 25 to 30 feet above the road's surface on a nearby utility pole, told the jury that Paul was not driving in the left westbound lane, but was using the middle turn lane as a westbound driving lane. Lamkin acknowledged that a truck, positioned in the left lane, obscured his vision so that he could not see whether any vehicles were in the middle lane. He testified that he was cautiously driving past the stopped vehicles at about two miles per hour and did not see the Laughlin vehicle in the turn lane until it was too late to avoid a collision. The right front portion of his pick-up truck hit the right front fender of the Laughlin vehicle.

Gladys, who was not wearing a seat belt, sustained a cut to the side of her head near her right temple. She was transported to a hospital by ambulance where she was treated and released that same day. Although the cut to her head healed within a few days, she alleged that she had developed acute myofascial pain syndrome as a result of the injury and at the time of trial still suffered from chronic pain on the right side of her head, in her right eye and neck, and from depression. Her expert witness and treating physician, Dr. Terry Davis (Dr. Davis), testified that Gladys' pain syndrome and depression were caused by the accident and/or the injuries sustained in the accident. He also stated that her long-term prognosis was good and that 90% of patients with the syndrome did well with continued treatment. In his deposition, taken in April 1996, the doctor opined that Gladys would need treatment for another year and a half.

Gladys filed her complaint against Lamkin on October 11, 1995. On March 14, 1996, Lamkin filed a third-party complaint in which he alleged that Paul was negligent in the operation of his vehicle. The matter was tried by jury in June 1996. Prior to trial, Gladys moved *in limine* to prohibit Lamkin from mentioning her failure to wear a seat belt on the basis that there was no competent evidence that her failure to wear a seat restraint was a substantial factor in contributing to her injury. The motion was denied.

The jury found that both Lamkin and Paul were negligent in operating their vehicles, and that their negligence was a substantial factor in causing the accident. The jury also found that Gladys' failure to wear a seat belt was a substantial factor in causing her inju-

ries. It apportioned 60% of the causation of Gladys' injuries to Lamkin, 25% to Paul and 15% to Gladys. The jury then awarded Gladys $4,594.52, the total amount she claimed in medical expenses attributable to the accident, including the hospital bill and Dr. Davis' bills. The jury made no award for pain and suffering.[1]

A judgment in accordance with the jury's findings was entered on June 25, 1996. However, because Gladys' medical expenses were less than the amount of basic reparations benefits, she did not receive a monetary award. Further, a judgment was entered in favor of Lamkin on his third-party complaint against Paul. Again, the judgment did not involve the recovery of money damages. Gladys' motion for a judgment notwithstanding the verdict and/or a new trial, and Paul's motion to alter or amend the judgment were denied on August 1, 1996, except the judgment was amended to award Gladys her costs from Lamkin. Both Gladys and Paul have appealed from the final judgment.

In her appeal, Gladys argues that she is entitled to a new trial because the trial court erred (1) in allowing the jury to apportion fault against her and (2) in not granting her motion for a new trial based on the jury's failure to award any sum for her pain and suffering. We agree that these errors by the trial court require reversal of the judgment and a new trial on the issue of damages.

■ There is no question, as Lamkin argues, that at the time of the accident there was a Jefferson County ordinance which mandated that drivers and occupants of vehicles wear a "properly adjusted and fastened safety belt. . . ." Jefferson County Traffic Code, § 71.61. Clearly, failure to comply with an ordinance amounts to negligence *per se.* *Newman v. Lee,* Ky., 471 S.W.2d 293 (1971). However, it was incumbent upon Lamkin to present evidence from which the jury could determine, without resorting to speculation, that Gladys' failure to comply with the ordi-

nance caused or enhanced her injuries. *See Britton v. Wooten,* Ky., 817 S.W.2d 443, 447 (1991), and *Peak v. Barlow Homes, Inc.,* Ky.App., 765 S.W.2d 577 (1988). Lamkin did not call an expert witness to testify for this purpose. Instead, he attempted to establish the causative nexus by using the cross-examination testimony of Dr. Davis, who specializes in pain management. The relevant testimony is as follows: [2]

Q. Now, Ms. Laughlin has said she wasn't wearing her belts at the time of this motor vehicle accident. And she also says that when the impact occurred her body was slammed against something in the car, which she can't identify, and then she bumped her head in that process. Isn't it less likely that she would have done so had she been fully belted?

A. That depends on the direction of the collision.

Q. If it's at the right front corner of the automobile?

A. It depends on whether it was an anterior or whether it was a lateral impact. The lateral impact, it could very well have slammed the side of her head into the side post of the car and had the same injury whether she had a belt on or not. If you're supposing, which I—which I assume you're doing.

Q. Well, I'm hypothecating that if she had been restrained, wouldn't it be less likely she would be slammed into anything in this accident?

A. No, I don't think—that's not true.

Q. Well, we have established that the belts tend to restrain the body from banging around in the automobile and to keep it in the seat?

A. Yes.

Q. Which is the idea?

A. Right.

Q. And if she had had her belts on wouldn't she have been more likely to have been restrained and stayed in the seat

---

1. Gladys, a housewife, made no claim for lost wages or for the permanent impairment of her ability to earn money. Even though Dr. Davis testified that she would need continued medical treatment, Gladys also did not seek any sum for future medical expenses.

2. Interestingly, this testimony was elicited by Paul's attorney, not by Lamkin's.

than moving around striking things in the car?

A. Yes, I agree with that.

◼ Lamkin insists that this testimony, particularly Dr. Davis' response to the last question recited above, was sufficient to allow the jury to determine that Gladys' failure to wear a seat belt was a substantial factor in causing her injuries. It is our opinion, however, that the doctor's general statements about the benefits attributable to the use of seat belts are woefully inadequate to establish a nexus between the injury Gladys sustained in the accident and the failure to utilize a seat restraint.

◼ It is commonly known that seat belts are designed to restrain occupants of vehicles. That seat belts can be effective in preventing death and injury from accidents has been well established. However, in order for the jury to assess fault in any specific instance, there must be proof that the negligent failure to wear a seat belt caused or enhanced the plaintiff's particular injury. *Wemyss v. Coleman*, Ky., 729 S.W.2d 174, 181 (1987). At most, Lamkin established that had Gladys been wearing a seat belt she would have been less likely to move around or strike things in the car. Dr. Davis did not, however, state with any degree of probability that had Gladys worn a seat belt she would not have injured her head. Indeed, the doctor opined that given the type of impact, a seat belt might not have had any effectiveness in preventing an injury to her head. We agree with Gladys that the general and vague testimony was not sufficient to support an instruction allowing the jury to consider the issue of Gladys' comparative fault in causing her injuries. *See Bass v. Williams*, Ky.App., 839 S.W.2d 559 (1992).

On remand, the trial court is instructed to vacate that portion of the judgment which attributes fault to Gladys for any portion of her injuries. Further, the trial court is instructed to amend its judgment to apportion fault between the defendant, Lamkin, and the third-party defendant, Paul, in the same proportion as the jury's original allocation of fault to these two parties. That is, the 60% of fault attributable to Lamkin should be amended to 71% (60%/85%); Paul's degree of fault should be amended to 29% (25%/85%).

◼ Although a new trial on the issue of liability will be avoided by simply removing Gladys' fault from the judgment and apportioning the fault erroneously attributable to her to the other parties proportionately, it is necessary to reverse for a new trial on damages. As stated previously, the jury awarded Gladys all the medical expenses she had incurred as a result of the accident, yet it did not make any award for pain and suffering. While the jury did not have to believe either the testimony of Gladys or her doctor that she suffers from myofascial pain syndrome, there is no question that she sustained a cut to her head which necessitated stitches to remedy, that she suffered contusions to her shoulder, and that she was prescribed pain medication at the emergency room. Clearly, the failure of the jury to make any award for pain and suffering while awarding Gladys her medical expenses resulted in a verdict which was both inconsistent and inadequate. *See Prater v. Coleman*, Ky.App., 955 S.W.2d 193, 194 (1997), and *Hazelwood v. Beauchamp*, Ky.App., 766 S.W.2d 439, 440–441 (1989). The trial court's failure to grant Gladys' motion for a new trial based on the inadequacy of the award was clearly erroneous as a matter of law. *Prater, supra*, at 195.

◼ Gladys also argues that the trial court committed reversible error in failing to direct a verdict of liability against Lamkin. Lamkin admitted turning left from the shopping center into the middle lane of a highway although his view was obstructed by the vehicles to his left. Reasonable minds would have to agree that Lamkin violated statutory and common law duties to operate his vehicle in a safe manner and that his breach of duty was a substantial factor in causing the accident. Nevertheless, we agree with Lamkin that this error was harmless since the jury ultimately determined that his negligence was a substantial factor in causing the accident.

◼ We disagree with the argument advanced by Gladys and by Paul in his appeal, that the trial court erred in refusing to grant Paul's motion for a directed verdict of non-

liability and in allowing the jury to apportion fault between both drivers. The Laughlins insist that Paul was free of negligence and that Lamkin's actions were the sole proximate cause of the accident. In his brief, Paul states:

> The Court will scour the record in vain for any evidence that [he] did anything other than drive in a westwardly direction on the favored street where all of the moving vehicles in both directions, regardless of what lane they were in, had the right-of-way over Mr. Lamkin who was trying to pull out.

The argument that the driver of a vehicle on a superior or favored roadway who collides with a driver coming from an inferior road is entitled to a directed verdict merely because he occupied the favored highway was rejected in *Mahan v. Able*, Ky., 251 S.W.2d 994 (1952), a case with very similar facts. It cannot be disputed that Paul was driving on the superior roadway and that he had the right-of-way over Lamkin. Yet, those facts alone did not allow Paul to proceed with impunity. *Id.* at 997. *See also Covington v. Friend Tractor and Motor Company, Inc.*, Ky.App., 547 S.W.2d 771 (1977).

Having reviewed the videotape of the proceedings, it is apparent that the jury was presented with significant conflict in the testimony as to how this accident occurred. Three witnesses testified that Paul was using a turn lane, a lane bounded on both sides by a solid yellow line, in an inappropriate manner, that is, for his own personal westbound lane, instead of as a turn lane. There was also evidence that traffic on the Outer Loop was congested, that the vehicles in both of the two westbound lanes were stopped, and that the drivers in both of the two westbound lanes had made an opening at the intersection of the Outer Loop and the entrance to Knobview Shopping Center to allow vehicles to exit the shopping center. Further, even Paul testified that he observed the cars in the right lane slowing or stopping for some reason. It is this evidence that distinguishes

the instant case from those relied upon by Gladys in which the driver of the inferior road was determined to be the sole cause of the collision as a matter of law. *See Capps v. Violett*, Ky., 488 S.W.2d 695, 697 (1972) (sole cause of accident attributed to driver entering intersection where there was no evidence that driver on superior road "could have, in the exercise of ordinary care, done anything to avoid the collision"); *Charlton v. Jacobs*, Ky.App., 619 S.W.2d 498 (1981) (driver entering portion of highway she could not see due to a truck turning right from outer lane was solely liable for death of motorcyclist who was in inner lane and blocked from her view by the truck).

We believe, just as the Court did in *Mahan*, that Paul, "even though he had the right of way, could reasonably anticipate not only a bare possibility but even a likelihood of attempted crossings at that intersection." *Id.* In our opinion, the evidence clearly presented a jury issue as to whether Paul breached his duty to operate his automobile reasonably and with ordinary care under the circumstances and supports the jury's finding that Paul was partially at fault.

■ Finally, Paul contends that the trial court erred in entering a judgment against him. We agree. The judgment, as stated earlier herein, does not provide for the recovery of money but reflects that Paul was negligent and that apportionment of fault was appropriate.[3] Nevertheless, under our current scheme of comparative negligence, Lamkin was not entitled to a judgment against Paul. *See Kevin Tucker & Associates v. Scott & Ritter*, Ky.App., 842 S.W.2d 873 (1992). Rather, Lamkin, who is not entitled to indemnity or contribution from Paul, *id.* at 874, and who never sought damages of any kind from Paul, obtained all the relief to which he was entitled when the trial court included Paul in its apportionment instruction.

■ We are not persuaded by Lamkin's argument that the error, if any, is harmless. In his brief, Paul contends that the judgment

---

**3.** The amended judgment reads: "Judgment is entered in favor of James E. Lamkin against Paul Laughlin to the extent that apportionment of fault is allowed by and between Mr. James Lam-

kin and Mr. Paul Laughlin but Mr. James E. Lamkin shall recover no money from Mr. Paul Laughlin on the third-party complaint."

could "affect[ ] his credit rating, his automobile insurance rates, and even his insurability under automobile insurance policies, as well as his ability to obtain a mortgage for the purchase of real property." We take judicial notice of the fact that a person who has a judgment against them can incur negative consequences.

Accordingly, the judgment of the Jefferson Circuit Court is reversed and remanded for entry of a new judgment on the issue of liability consistent with this Opinion and for a new trial on the issue of damages.

BUCKINGHAM, J., concurs.

GUIDUGLI, J., concurs in part and dissents in part and furnishes separate opinion.

GUIDUGLI, Judge, concurring in part and dissenting in part.

I concur with the majority opinion in all aspects except one. I must respectfully dissent from the majority opinion as to the admissibility of Gladys Laughlin's (Gladys) failure to wear a seatbelt. I believe that there was sufficient evidence presented from which the jury could determine that Gladys's failure to comply with the Jefferson County ordinance caused or enhanced her injuries. The fact that the evidence was elicited on cross-examination by Paul Laughlin's attorney, and the fact that appellee, James E. Lamkin, did not present his own expert on this issue, does not diminish from the fact that the jury was presented expert testimony that had Gladys been wearing her seatbelt she would not have been "banged around" or "slammed into anything."

This testimony provided sufficient evidence that Gladys's failure to wear a seatbelt was a substantial factor in causing her injuries. Therefore, I would affirm the trial court on this issue and not disturb the jury's apportionment determination. However, I do concur with the majority on all other issues and would remand the case based upon the inadequacy of the award relating to pain and suffering.