RENDERED:  NOVEMBER 5, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1117-DG

DOROTHEA BRADLEY                                                APPELLANT


ON DISCRETIONARY REVIEW FROM JEFFERSON CIRCUIT COURT
v.                    HONORABLE DARRYL S. LAVERY, JUDGE
ACTION NO. 18-XX-000023


COMMONWEALTH OF KENTUCKY                                         APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  LAMBERT, TAYLOR, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  This case is before us on discretionary review from the

Jefferson Circuit Court and involves whether restitution can properly be imposed

upon an uninsured driver to compensate another motorist for the loss associated

with having to pay her own automobile insurance deductible.  The basis for

restitution ordered by the district court was that the uninsured driver pled guilty to

a failure to maintain motor vehicle insurance, and was therefore at-fault for the resultant monetary damages; thus, the restitution was linked to the deductible the victim motorist lost because the other driver was uninsured. However, the district court committed reversable error by failing to conduct a proper hearing and to thereafter make any findings regarding the uninsured driver being at-fault for the underlying collision and being financially able to pay the restitution ordered.

On January 9, 2017, in Jefferson County, Dorothea Bradley was involved in a vehicle collision with Shanetta Thompson. The police report for this collision stated that Bradley failed to yield the right of way while exiting a parking lot onto the roadway and struck the passenger side of Thompson's car.

At the scene, Bradley was cited and charged with violating Kentucky Revised Statutes (KRS) 186.170 (no registration) and KRS 304.39-080(5) (failure of an owner to maintain required insurance or security, first offense). There are no factual issues regarding Bradley's violation of these statutes. On March 7, 2017, the Commonwealth informed Bradley that it would seek restitution on behalf of Thompson in the amount of $1,000 which represented the insurance deductible incurred by Thompson owing to damage to her vehicle resulting from the accident.

On April 10, 2017, Bradley filed a motion to preclude the imposition of restitution as a part of any sentence to be imposed upon her for the charged offenses. Bradley's motion sought to exclude the payment of restitution on the

basis that any monetary damage resulting from the accident was not the direct result of her criminal activity of having no insurance as required for the payment of restitution under KRS 533.030(3).

Bradley's motion was denied by the Jefferson District Court which held that the applicable statutes were clear and unambiguous and that a person convicted of having no insurance could be assessed restitution for damages occurring as a result of an automobile accident. The district court noted that the police report indicated that Bradley was at-fault for the accident. The district court stated that if Bradley pled guilty to a violation of KRS 304.39-080, it would set a date for a restitution hearing allowing Bradley reasonable time to prepare, thirty days' notice from the Commonwealth as to proposed witnesses and documents to be introduced, and opportunity at the restitution hearing to present her own evidence and offer rebuttal. The district court specifically stated that the restitution hearing would be conducted, "in a manner consistent with" both *Jones v. Commonwealth*, 382 S.W.3d 22 (Ky. 2011) and *Dillard v. Commonwealth*, 475 S.W.3d 594 (Ky. 2015). The district court also stated in its order that, "[a]t the restitution hearing, the defendant shall have a reasonable opportunity, with the assistance of counsel, to present evidence or other information to rebut the claim of restitution and the amount thereof."

Bradley subsequently pled guilty to a violation of KRS 304.39-080(5), first offense. In exchange for her plea, the expired registration charge was dismissed. Her plea offer was accepted by the district court and Bradley was sentenced to ninety days, conditionally discharged for two years on the condition of no new offenses. There was no monetary fine imposed. When Bradley entered her guilty plea, the Commonwealth again indicated that it would seek restitution in the amount of $1,000 as part of Bradley's conditionally discharged sentence.

At the subsequent hearing on restitution, the Commonwealth submitted a certified copy of Thompson's insurance policy and materials documenting her $1,000 deductible. That amount, and Thompson's incurring that amount, were not contested. At the Commonwealth's request, the district court also took judicial notice of the official traffic report which noted that Bradley failed to yield the right of way to oncoming traffic when exiting a parking lot into traffic. The district court did not take further evidence of Bradley's fault for the accident or resolve this issue of fault. Rather, the district court simply determined that it was the criminal act of failing to have insurance, not the accident, which caused Thompson to suffer an economic injury and concluded Bradley was obligated to pay restitution. For purposes of appeal, the district court did allow Bradley to testify by proffer as to the issue of fault, and she testified that Thompson was speeding when the accident occurred and had run a red light.

The district court, in its written order, again concluded that Bradley was obligated to pay restitution without making a factual finding that Bradley was at fault in the accident and ordered her to pay Thompson the total amount of $1,000 at the rate of $75.00 per month. Bradley appealed to the circuit court. The circuit court ruled that the district court acted within its discretion when it imposed restitution, finding that had Bradley carried liability insurance, Thompson would not have incurred direct, out-of-pocket losses. It further ruled that there was no denial of due process.

Bradley sought and was granted discretionary review. Subsequently, another panel of this Court published the opinion in *Dale v. Commonwealth*, 604 S.W.3d 281 (Ky.App. 2019). Recognizing the importance of *Dale* to her appeal, Bradley sought and was granted permission to cite the *Dale* opinion as additional authority in this matter and the import of *Dale* will be addressed herein.

In her appeal, Bradley argues that the district court abused its discretion in ordering restitution because: (1) her only conviction under KRS 304.39-080(5) was not a crime that resulted in property damage to Thompson's vehicle; (2) a criminal restitution hearing is an inappropriate forum to resolve civil issues of causation, damages, and apportionment; (3) requiring restitution for an offense under KRS 304.39-080(5) creates negligence *per se* in violation of the right to a jury trial, usurps due process, and is contrary to existing precedent; (4)

-5-

she was denied due process when the district court refused to allow her to contest that she was at fault for the accident; and (5) the district court did not make a factual finding regarding Bradley's ability to pay.

Whether the district court properly ordered restitution for damages incurred by Thompson as a direct result of a criminal act for which Bradley has been convicted is properly reviewed under an abuse of discretion standard. *Commonwealth v. Morseman*, 379 S.W.3d 144, 147 (Ky. 2012). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). However, when asked to "construe statutory provisions, we do so *de novo*." *Morseman*, 379 S.W.3d at 148.

In analyzing Bradley's first and third assignments of error, we agree with Bradley's contention that her conviction under KRS 304.39-080(5) was not a crime, the commission of which directly resulted in damage to Thompson's vehicle. However, that does not end our inquiry. As explained herein, we conclude that a motorist's failure to have or maintain insurance coverage, in clear violation of the laws of the Commonwealth and the explicit intention of our Legislature, may directly cause financial "damage" to insured motorists (in the

form of lost/paid insurance deductibles), when such uninsured motorists are found to be at fault in, or otherwise be a cause of, the underlying motor vehicle accident.

There are two separate sources of statutory provisions relevant to this determination. The first are to be found within Commonwealth's Motor Vehicle Reparations Act (MVRA).

KRS 304.39-010 states:

The toll of about 20,000,000 motor vehicle accidents nationally and comparable experience in Kentucky upon the interests of victims, the public, policyholders and others require that improvements in the reparations provided for herein be adopted to effect the following purposes:

(1) To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles[.]

Next, KRS 304.39-110(1) specifies the mandatory "basic" limits of insurance coverage which every vehicle owner and operator must acquire prior to operating a motor vehicle on our roads. Such requirements include a minimum of $25,000 of coverage for damage to property.

KRS 304.39-080(5), to which Bradley voluntarily pled guilty, provides that every owner or operator of a motor vehicle shall have and maintain the insurance or security required by law "for payment of tort liabilities" and that a

violation of such requirements can result in not only the revocation of a motor vehicle's registration, but also subject the uninsured motorist to "the penalties in KRS 304.99-060."

The MVRA's language underscores our Legislature's clear and specific intent that all motor vehicles registered in our Commonwealth must be insured not only for bodily injuries, but also for property damages.

The mandatory criminal penalties for Bradley's violation are found in KRS 304.99-060. Subsection (1)(a) states that the "owner" of an uninsured vehicle shall, among other penalties, be fined between $500 and $1,000, or receive up to a ninety-day jail sentence, or be both fined and jailed. KRS 304.99-060(1)(a)1. Subsection (2)(a) similarly provides that a person who "operates" an uninsured motor vehicle shall be fined between $500 and $1000, or receive up to a ninety-day jail sentence, or be both fined and jailed. KRS 304.99-060(2)(a). Subsection (3) provides that if an "operator" is also the "owner" of the uninsured vehicle, then that person shall be subject to penalties under both sections. KRS 304.99-060(3).

In accordance with these statutes, Bradley could have been fined up to $1,000 by the district court as the owner of an uninsured vehicle and fined up to an additional $1,000 as the operator of the vehicle at the time of the accident. Other than alleging an inability to pay, Bradley would be able to offer no objection to

those statutory financial penalties if they had been imposed. However, no monetary fine was levied. Instead, Bradley objects to paying $1,000 to Thompson.

Absent from the above statutes, and the MVRA in general, are any provisions for the imposition of restitution. Restitution for criminal conduct is addressed within KRS Chapters 532 and 533 of the Kentucky Penal Code. Restitution is defined as "any form of compensation paid by a convicted person to a victim for counseling, medical expenses, lost wages due to injury, or *property damage and other expenses* suffered by a victim because of a criminal act[.]" KRS 532.350(1)(a) (emphasis added). It is mandatory in Kentucky for a trial court to consider the economic impact of crimes on the victims to order the defendant to make restitution, in addition to any other penalty provided, for injuries to victims including their "monetary damage[s]" or "direct out-of-pocket losses" which resulted from the crime committed. KRS 533.030(3). Notably, that definition includes only damages caused by a criminal act, not a negligent act.

KRS 532.032(1) addresses the general circumstances when restitution in criminal cases must be paid. That statute provides:

> Restitution to a named victim, if there is a named victim,
> shall be ordered in a manner consistent, insofar as
> possible, with the provisions of this section and KRS
> 439.563, 532.033, 533.020, and 533.030 in addition to
> any other part of the penalty for any offense under this
> chapter. The provisions of this section shall not be
> subject to suspension or nonimposition.

Subsection (3) of that same statute provides that "[i]f probation, shock probation, conditional discharge, or other alternative sentence is granted, restitution shall be a condition of the sentence."

While KRS 533.030(3), 532.032(1) and (3) all use the mandatory word "shall," the imposition of restitution by our courts is limited to the extent that to do so is consistent with the statutes referred to therein, including KRS 533.030(3) which specifically limits the restitution award to those damages suffered "as a result of the crime." It is this extent of the nexus or connection, proximate or otherwise, between (a) the crime(s) committed, and (b) the injuries/damages for which restitution is ordered, that concerns this inquiry.

In construing the MVRA and penal code together, we must first recognize that the legislative policy of the MVRA is "to keep uninsured motorists off Kentucky's roads." *Nantz v. Lexington Lincoln Mercury Subaru*, 947 S.W.2d 36, 38 (Ky. 1997). Our penal code states, "[a]ll provisions of this code shall be liberally construed according to the fair import of their terms, to promote justice, and to effect the objects of the law." KRS 500.030. The courts of the Commonwealth are to "liberally construe[]" the restitution statutes found within our penal code "in favor of their remedial purpose." *Morseman*, 379 S.W.3d at 148. In *Morseman*, our Supreme Court acknowledged that Kentucky's restitution statutes require "a causal connection between the criminal act and the ordered

-10-

restitution." *Id.* at 151. While there is an exception in those cases where the defendant agrees to pay restitution pursuant to a plea agreement, that exception is not applicable here because Bradley did not voluntarily agree to pay restitution as part of her conditional guilty plea. *Id.* at 152. Therefore, the issue here is whether there was a causal connection between the crime and the damage.

In *Rentschler v. Lewis*, 33 S.W.3d 518 (Ky. 2000), our Supreme Court held that there was no causal connection between a car accident and the criminal offense of operating a motor vehicle without a valid operator's license. As the Court explained:

> The fact of consequence in this case is whether the manner in which Lewis operated his vehicle was a substantial factor in causing the accident. His status as a licensed or unlicensed driver would not tend to prove or disprove that fact. Therefore, the trial judge correctly concluded that such evidence was irrelevant, thus inadmissible.

*Id.* at 519. The Court did not specifically address in *Rentschler* whether restitution was available to a person whose vehicle was damaged by a defendant operating a vehicle in violation of KRS 304.39-080(5). However, its reasoning was later found applicable in *Dale*, where that precise issue was addressed.

In *Dale*, 604 S.W.3d 281, the defendant entered a conditional guilty plea to KRS 304.39-080 for failure to maintain insurance after he was involved in a fatal motor vehicle accident. Prior to the court hearing evidence regarding

-11-

restitution, the defendant filed for bankruptcy which stayed a related civil action filed by the victim's estate in circuit court. Noting that ordered restitution is not dischargeable, the district court ordered Dale to pay the statutory maximum of $100,000 to the deceased motorist's estate. The categories of damages for which restitution was ordered in *Dale* were (a) the value of a motorcycle, and (b) lost earnings of the deceased. *Dale*, 604 S.W.3d at 284. That award was affirmed by the circuit court and discretionary review granted by the Court of Appeals.

It is the character of the damages sustained by and awarded to the victim in *Dale* which distinguishes it, as a matter of fact and law, from the one item of damage (insurance deductible only) alleged herein.

Dale argued that the injuries for which restitution was ordered could not be the direct result of his failure to maintain insurance. *Id*. at 287. The Court of Appeals noted that Kentucky courts had not addressed the issue of "what types of losses arise 'as a direct result of the crime,'" as that phrase is used in KRS 533.030(3). *Id*. at 288. Looking to federal law and *Rentschler*, the Court concluded that "Dale's failure to maintain insurance did not directly cause the financial loss incurred by Whitaker" and "does not prove whether his actions caused the accident." *Id*. Importantly, this Court emphasized that the Commonwealth was required to prove more than that Dale did not maintain insurance:

> [T]he Commonwealth failed to prove Dale's failure to maintain insurance directly caused Whitaker's death or damage to his motorcycle. Because Dale was not charged with any crime in connection with the nature of restitution sought, and because causation was not addressed, the district court improperly imposed restitution on Dale.

*Id*. at 288-89.

Such nexus between a statutory violation and the (allegedly) resultant injuries has been explored before in our Commonwealth within other contexts. Utilizing the standard of "substantial factor," the Supreme Court has stated that while it is unquestioned that violations of statutes constitute negligence *per se*, such statement is coextensive with the requirement that the violation must be "a substantial factor in causing the result." *Britton v. Wooten*, 817 S.W.2d 443, 447 (Ky. 1991).

In the present matter, as in *Dale*, the only crime to which Bradley entered a plea of guilty was the violation of KRS 304.39-080(5). Unlike in *Dale*, here our driver was only ordered to pay restitution for the monetary value of the deductible lost/suffered by the victim. It is agreed that structural damage to an automobile, or physical injuries to a motorist, might not be said to be actually caused by, or proximately caused by, the failure to have automobile insurance—even though an uninsured automobile should not be operated on our roadways.

-13-

However, in practice and reality, the loss of a deductible, by one whose vehicle is struck by an uninsured motorist, is indeed a "direct" injury that is readily known to any motorists in the Commonwealth who have had the all-too-common experience of being hit by an uninsured driver. Such conclusion is in conformity with our penal code at KRS 501.060(1) regarding causal relationships, where it is stated that "[c]onduct is the cause of a result when it is an antecedent without which the result in question would not have occurred." Bradley's conduct in failing to have insurance was most definitely an antecedent, without which Thompson would not have incurred the loss of her deductible. The financial injury to motorists who follow the law, caused by those who do not, is both readily foreseeable and a natural consequence of uninsured motorists' derogation of the MVRA.

If Bradley was at fault in the accident, but for Bradley's failure to have liability insurance, Thompson would have recovered her deductible in conformity with our insurance statutes, regulations, and the general insurance practices of our Commonwealth. As stated another way, by virtue of her criminal failure to have liability insurance, if Bradley was at fault, Bradley *directly* caused Thompson to lose her deductible and/or denied Thompson the ability to recover her deductible.

Having concluded that it was proper for the district court to recognize the loss of a deductible as a compensable injury in restitution proceedings, we next turn our inquiry to the issue of fault for the underlying accident, the conduct of the restitution hearing, the sufficiency of the evidence presented, and district court's findings. This review encompasses Bradley's second and fourth arguments.

In *Jones*, the Supreme Court described and set forth the requisites of due process within restitution determinations. Two of the listed requirements relevant to the present determination are:

> • a reasonable opportunity for the defendant with assistance of counsel to present evidence or other information to rebut the claim of restitution and the amount thereof; and
>
> • the burden shall be upon the Commonwealth to establish the validity of the claim for restitution and the amount of restitution by a preponderance of the evidence, and findings with regard to the imposition of restitution must be supported by substantial evidence.

*Jones*, 382 S.W.3d at 32.

From the record presented, it is obvious that restitution was both sought by the Commonwealth, and considered by the district court, based upon the accident report (quoted by the district court in its opinion) which reported that Bradley failed to yield right of way in entering the roadway from a parking lot. That report was the only evidence of Bradley's fault submitted into evidence.

-15-

Police reports are generally considered hearsay. Pursuant to the Kentucky Rules of Evidence ("KRE") 803(8), a police report is not exempt from hearsay, unless it is offered for an admissible purpose. *Allen v. Gueltzow*, 535 S.W.3d 333, 335 (Ky.App. 2017). KRE 803(8)(A) specifically excludes police reports from the public records exception to the hearsay rule. Therefore, in all other contexts, a police report could not be lawfully considered as evidence of fault for the accident. However, in the context of restitution proceedings such reports may be considered by the court. KRE 1101(d)(5) states that the Kentucky Rules of Evidence are not applicable to "sentencing by a judge[.]"

Restitution falls within the court's sentencing authority and, therefore, does not require the strict application of the Kentucky Rules of Evidence. As stated in *Jones*, "implicit in our statutory scheme requiring restitution, is an adversary hearing, ordinarily conducted in conjunction with the final sentencing hearing, at which the trial court will have broad discretion to make findings based upon reliable information, but not bound by the rules of evidence or traditional rules of pleading." *Jones*, 382 S.W.3d at 31.

Certainly, the district court could have viewed the facts described in the police report, and the conclusion drawn therein, as that of a disinterested third party created in the performance of their duties as a responding officer. In many, if not most, restitution circumstances, a court's reliance on or reference to a police

report within a determination that an uninsured driver was at fault in an accident could be considered to be supported by substantial evidence. Substantial evidence is that evidence, taken alone or in light of other proof, that a reasonable mind would find sufficient to support a conclusion. *Goncalves v. Commonwealth*, 404 S.W.3d 180, 189 (Ky. 2013). Admitting the report into evidence, and reliance upon the report by the district court, would fall in line with the Supreme Court's determination in *Hearn v. Commonwealth*, 80 S.W.3d 432, 436 (Ky. 2002), where the Court recognized the clear legislative intent that restitution be established efficiently and fairly as part of the sentencing process in a summary proceeding that "serves judicial economy and the traditional notions of fair play and substantial justice." The Court further observed that "[t]he trial court [in a criminal case] has the statutory authority to establish restitution and is in the best position to make the appropriate and well-informed decision in a fair and impartial manner." *Id.*

However, the district court did not properly allow for Bradley to contest a finding of her negligence. Efficiency and speed aside, while KRS Chapter 532 requires judges to impose restitution when appropriate, it does not compel judges to do so, "without conducting a proper hearing with whatever degree of formality is necessary in the particular circumstances to assure compliance with constitutional due process." *Jones*, 382 S.W.3d at 31.

-17-

Furthermore, "[i]n the more complex claims, with factual issues that do not lend themselves to being reliably resolved in a summary proceeding, the trial judge must exercise the broad discretion of that office to resolve the matter in a way that respects the constitutional rights of all the parties and that achieves substantial justice." *Id*.

Allowing Bradley to only offer rebuttal on the issue of fault by proffer did not allow her "to present evidence or other information to rebut the claim of restitution[,]" which in turn violated her rights of due process within the proceedings. *Id.* at 32.

As to the last assignment of error, that the district court did not make a necessary factual finding regarding her ability to pay ordered restitution, Bradley is also correct. Bradley's counsel preserved this issue at the restitution hearing. The district court did not take evidence of Bradley's alleged indigence and, again, made no related findings of fact or conclusions of law. Since this matter was briefed, this Court rendered the opinion in *Compise v. Commonwealth*, 597 S.W.3d 175 (Ky.App. 2020). In that decision we determined that the circuit court hearing a motion for revocation should have made findings regarding defendant's financial situation and ability to pay restitution, stating:

> While the issue of restitution is not directly before us, the manner in which restitution was ordered in this case gives us pause. There were several indications that Compise was impoverished, such as that she was

appointed the public defender and was repeatedly released on her own recognizance so that she could work because she could not afford to pay a bond.

. . .

Although the circuit court must have been aware that Compise was impoverished given that it chose to omit ordering her to pay a monthly supervision fee to Probation and Parole in the order granting pretrial diversion, the court apparently never considered whether Compise had the ability to pay restitution when granting pretrial diversion or issuing its ruling on the amount of restitution due. Findings should have been made regarding Compise's financial situation, her ability to pay restitution, and what, if any, monthly payments she could afford. *See Wallace v. Commonwealth*, No. 2013-CA-001031-MR, 2015 WL 603395, at *2-3 (Ky.App. Feb. 13, 2015) (unpublished) (explaining that findings must be made as to whether a defendant is a "poor person" and imposition of restitution is improper if the defendant would not be required to pay court costs or public defender fees); *Neal v. Commonwealth*, No. 2005-CA-001255-MR, 2007 WL 867088, at *2 (Ky.App. Mar. 23, 2007) (unpublished) (discussing that counsel is ineffective if counsel failed to inquire as to defendant's ability to meet restitution payments and defendant in fact lacked such ability).

*Id.* at 181.

It was incumbent upon the district court to enter findings regarding defendant's financial situation and ability to pay prior to imposing restitution. The court within those findings might also advise whether it had determined to order restitution against Bradley in lieu of imposing a monetary fine for her admitted

-19-

criminal conduct. This would appear to have been the court's design, but such is not reflected in the record.

Accordingly, we reverse and remand the Jefferson Circuit Court's opinion and order affirming the Jefferson District Court's judgment as to restitution and instruct the circuit court to vacate and remand the judgment for the district court to conduct a full restitution hearing in conformance with *Jones*, 382 S.W.3d at 31-32, and to make factual findings regarding both Bradley's fault for the underlying motor vehicle accident and her ability to pay restitution.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Cicely J. Lambert
Christopher B. Thurman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky
(former)

David A. Sexton
Special Assistant Attorney General
Louisville, Kentucky